## MATTER OF NOLAN

### In Deportation Proceedings

### A-35298972

*Decided by Board January 26, 1988*

(1) The pardon issued automatically to the respondent as a first felony offender pursuant to Article 4, section 5(E)(1) of the Constitution of the State of Louisiana of 1974 upon completion of his sentence does not satisfy the requirements of section 241(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(b)(1) (1982), and therefore does not excuse deportability under section 241(a)(4) of the Act, because the pardon is neither full nor unconditional and because it was not issued by the Governor or an otherwise constitutionally-recognized executive body of Louisiana.

(2) The availability or unavailability of a pardon under state or federal law, or the existence or nonexistence of a qualifying pardoning authority, is not determinative of whether an offense constitutes a "crime" within the ambit of section 241(a)(4) of the Act. *Matter of Cevallos*, 12 I&N Dec. 750 (BIA 1968), overruled.

CHARGE:

    Order: Act of 1952—Sec. 241(a)(4) [8 U.S.C. § 1251(a)(4)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Nelson Smith, Esquire
725 First City National Bank Building
El Paso, Texas 79901

ON BEHALF OF SERVICE:
George W. Katz
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

This case is before us on motion of the respondent to reopen in order to terminate the proceedings based on the existence of new evidence not available at the time of the original hearing. The motion will be denied.

The respondent, a native and citizen of the Republic of Ireland, entered the United States on January 5, 1978, as an immigrant. The record reflects that on November 6, 1980, he was convicted upon a plea of guilty in the Eighteenth Judicial District Court of the Parish of Iberville, Louisiana, of the crime of attempted simple burglary in violation of the laws of the State of Louisiana. For this crime, he was sentenced to 3 years' confinement in the Louisiana

Department of Corrections. The court suspended this sentence and placed the respondent on probation for a period of 4 years.

On September 22, 1981, an Order to Show Cause and Notice of Hearing (Form I-221) was issued charging the respondent with deportability under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1982), as an alien who was convicted of a crime involving moral turpitude within 5 years of entry and sentenced to confinement therefor in a prison or corrective institution for a year or more. At the deportation hearing, the respondent, through counsel, admitted the allegations set forth in the Order to Show Cause but denied deportability. Based on the conviction documents and other evidence introduced by the Immigration and Naturalization Service, the immigration judge determined that there was clear, unequivocal, and convincing evidence to establish that the respondent was deportable as charged under section 241(a)(4) of the Act. *Woodby* v. *INS,* 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1987). The respondent appealed and this·Board dismissed the appeal on July 20, 1984.

The respondent now seeks to reopen the prior·proceedings in light of new evidence which was not available and could not have been discovered or presented at the former hearing. He alleges that on November 6, 1984, he received an automatic and full pardon of his criminal conviction. He claims that under the provisions of the Louisiana State constitution, a first offender never previously convicted of a felony is pardoned automatically upon completion of his sentence without a recommendation from the Board of Pardons and without action by the Governor. Having received the only pardon available to first offenders in the State of Louisiana, he argues that his pardon comes under the auspices of section 241(b)(1) of the Act, 8 U.S.C. § 1251(b)(1) (1982), and as such, the deportation proceedings against him should be terminated. In support of the motion, the respondent has submitted a letter dated January 15, 1985, from the Vice Chairman of the Board of Pardons of the State of Louisiana and a statement of verification dated December 27, 1984, from the Acting Probation and Parole Director of the Louisiana Department of Public Safety and Corrections, both of which confirm that the respondent was automatically pardoned of his conviction effective November 6, 1984.

In order to warrant reopening, an alien must make a prima facie showing of eligibility for the relief requested. *INS* v. *Wang,* 450 U.S. 139 (1981); *Matter of Martinez-Romero,* 18 I&N Dec. 75 (BIA 1981), *aff'd, Martinez-Romero* v. *INS,* 692 F.2d 595 (9th Cir. 1982); *Matter of Sipus,* 14 I&N Dec. 229 (BIA 1972); *Matter of Lam,* 14 I&N Dec. 98 (BIA 1972). The question before us is whether the re-

spondent has shown that the automatic pardon granted him under Louisiana State law satisfies the pardon requirements of section 241(b)(1) of the Act so as to exempt his conviction from serving as a basis of deportability under section 241(a)(4) of the Act.

By definition, a pardon is an act of grace and mercy by which an offender is released from all the legal consequences flowing from his criminal conviction. *Knote v. United States*, 95 U.S. 149, 153 (1877); *see also Ex parte A. H. Garland*, 71 U.S. (4 Wall.) 333, 380–81 (1867); *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833). Generally speaking, a pardon may be absolute or conditional in nature. *United States v. Wilson, supra; Matter of S–*, 2 I&N Dec. 588, 590 (BIA, A.G. 1946). A conditional pardon is one to which a condition, either precedent or subsequent, is attached, the performance of which condition is necessary to the validity of the pardon. *Matter of C–*, 5 I&N Dec. 630, 633 (BIA 1954), and the cases cited therein; *Matter of S–, supra*. When a pardon is full, it "blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." *Ex parte A. H. Garland, supra*, at 380.

The immigration laws recognize the effectiveness of pardons in cases regarding deportation for a crime or crimes involving moral turpitude, but only under certain prescribed circumstances. Section 241(b) of the Act specifies:

> The provisions of subsection (a)(4) respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States. . . .

Thus, not just any pardon will suffice for the purposes of section 241(b)(1) of the Act. First, the pardon in question must be "full and unconditional" in nature. It must obliterate any future legal consequences flowing from the underlying adjudication of guilt and must not be dependent upon the fulfillment of any condition. *See Matter of Tajer*, 15 I&N Dec. 125, 126 (BIA 1974); *Matter of L–*, 6 I&N Dec. 355, 356 (BIA 1954); *Matter of T–*, 6 I&N Dec. 214, 216 (BIA 1954); *Matter of C–, supra*, at 633–34; *Matter of S–*, 5 I&N Dec. 10, 16 (C.O. 1952; BIA 1953). Second, the pardon must be executively, as distinguished from legislatively, conferred and be granted by either the President of the United States or the Governor of a state. *See Matter of Tajer, supra*, at 126; *Matter of K–*, 9 I&N Dec. 336, 337 (BIA 1961); *Matter of D–*, 7 I&N Dec. 476, 477 (BIA 1957); *Matter of R–*, 6 I&N Dec. 444, 445–46 (BIA 1954); *Matter of R–*, 5 I&N Dec. 612, 618–19 (BIA 1954). Although Congress has expressly manifested its intent to exempt from deportation those aliens convicted of a

crime of moral turpitude who have received a presidential or gubernatorial pardon, this Board has recognized the fact that in some instances, the supreme pardoning power may rest with an executive or executive body other than the President of the United States or the Governor of a state. *Matter of Tajer, supra* (Georgia State constitution vests power to issue executive pardons in State Board of Pardons and Paroles); *Matter of K–, supra* (unconditional pardon granted by United States High Commissioner for Germany); *Matter of C–R–,* 8 I&N Dec. 59 (BIA 1958) (unconditional pardon granted by Mayor of Scottsbluff, Nebraska, in the case of a conviction under a city ordinance); *Matter of D–, supra* (unconditional pardon granted by Georgia State Board of Pardons and Paroles); *Matter of T–, supra* (unconditional pardon granted by Governor of Hawaii before the Territory of Hawaii became a state).

The above restrictions were added by the Immigration and Nationality Act of 1952. Prior to that time, the immigration laws imposed no limitations on the type of pardon which would be sufficient to render an alien immune from deportation under a section 241(a)(4) charge. All that was required was for an alien to be "pardoned" of his conviction of a crime involving moral turpitude. *See* Act of Feb. 5, 1917, ch. 29, § 19, 39 Stat. 874, 889–90 (current version at 8 U.S.C. § 1251(b)(1) (1982)). Under previous law, recognition was granted to full pardons which were legislatively granted by operation of law and conditioned upon completion of the sentence imposed for the underlying conviction. *Perkins* v. *United States,* 99 F.2d 255 (3d Cir. 1938); *Mercer* v. *Lence,* 96 F.2d 122 (10th Cir.), *cert. denied,* 305 U.S. 611 (1938); *Matter of M–,* 2 I&N Dec. 871, 872 (BIA 1947). *See generally* Senate Comm. on the Judiciary, *The Immigration and Naturalization Systems of the United States,* S. Rep. No. 1515, 81st Cong., 2d Sess. 637 (1950). Pursuant to the provisions of the 1917 Act, this Board also accepted as valid pardons which were granted on the condition that the persons involved conduct themselves properly thereafter. *See Matter of B–,* 3 I&N Dec. 551, 554 (C.O., BIA 1949). With the passage of the 1952 Act, however, the benefits of section 241(b)(1) were restricted to those aliens who have obtained full and unconditional pardons issued by the President or a Governor. In so providing, Congress unequivocally removed from the benefits of section 241(b)(1) any pardon not satisfying those requirements.

In the case before us, the respondent asserts that the automatic pardon he received as a first offender pursuant to the provisions of Louisiana's State constitution satisfies the pardon requirements of section 241(b)(1) of the Act. Article 4, section 5(E)(1) of the Constitution of the State of Louisiana of 1974 provides:

(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.[1]

By its terms, this constitutional provision creates two separate and distinct categories of pardons: those granted by the Governor and those awarded automatically to first offenders by operation of law upon completion of the sentences imposed. In *State v. Adams*, 355 So.2d 917 (La. 1978), the Supreme Court of Louisiana determined that different legal consequences flow from each type of pardon. The court held that a full pardon granted by the Governor restores the status of innocence to the convicted person. Therefore, such a pardon precludes the use of the pardoned offense to later enhance punishment should a subsequent offense be committed. *Id.* at 921-22. On the other hand, in the case of automatic pardons, the court found that the delegates to the state constitutional convention did not intend for the mere completion of one's sentence to be the only prerequisite for the status of innocence to be restored to the convicted person. Consequently, the court ruled that the automatic pardon provision of the state constitution did not bar consideration of a first felony conviction in later adjudicating a person as a habitual offender under state law upon a subsequent conviction. *Id.* at 922; *see also State v. Lewis*, 366 So.2d 1355 (La. 1978); *State v. Walker*, 432 So.2d 1057 (La. App. 3d Cir. 1983); *see also State v. Wiggins*, 438 So.2d 565 (La. 1983) (automatic pardon does not preclude state from regulating circumstances under which first felony offender could possess a firearm).

After reviewing both the language of the constitutional provision regarding the automatic pardon and the interpretation given it by the Supreme Court of Louisiana, we conclude that as a matter of law, the automatic pardon received by the respondent does not satisfy the requirements of section 241(b)(1) of the Act. We first find that the respondent's pardon is not "full" in nature in that it does not restore the respondent to his former status of innocence. The highest judicial authority in the State of Louisiana has ruled that, although automatically pardoned, a first offender's conviction survives for the purpose of sentencing should the offender commit a subsequent crime. *State v. Adams, supra.* Second, the respondent's pardon was specifically conditioned upon his completion of the sen-

---

[1] The Board of Pardons is created under Article 4, section 5(E)(2) of the Constitution of the State of Louisiana of 1974.

tence imposed by the courts for his conviction. La. Const. Art. 4, § 5(E)(1). The pardon could not be obtained absent the fulfillment of this condition precedent. Thus, the pardon was not "unconditional" as is mandated by section 241(b)(1) of the Act. Third, the pardon obtained by the respondent is not an executive pardon for purposes of the immigration laws. The automatic first offender pardon was neither granted by the Governor of Louisiana nor issued by an otherwise constitutionally-recognized executive body. Rather, the respondent's pardon was granted automatically by operation of law upon the expiration of his period of probation. This type of pardon, although provided for under a state constitution rather than by statute, is akin to the legislative pardon which Congress clearly rejected when it enacted the current pardon provisions of the Act in 1952. *Matter of Tajer, supra; Matter of K–, supra; Matter of R–, supra; Matter of R–, supra.*

In the alternative, the respondent urges that the proceedings against him be terminated because, under Louisiana law, no pardon is available to him as a first felony offender that would satisfy the requirements of the immigration laws. Therefore, he argues, the crime of which he was convicted should not be considered a "crime" for the purpose of deportability under section 241(a)(4) of the Act. In advancing this argument, the respondent relies on *Matter of Cevallos*, 12 I&N Dec. 750 (BIA 1968), in which this Board held that a conviction for an offense for which there is no pardoning authority within the purview of section 241(b)(1) of the Act is not a conviction of a "crime" within the meaning of section 241(a)(4) of the Act.

At the outset, we note that the holding in *Cevallos* has never been followed or subsequently cited with approval either by this Board or by any court, and we believe with good reason. *Cevallos* stands for the proposition that if a pardon is unavailable because of the absence of a pardoning authority that would be recognized under section 241(b)(1) of the Act, then the offense underlying the conviction does not constitute a "crime" for the purpose of section 241(a)(4) deportability. This Board is not persuaded by this logic.

Whether a state opts to authorize the granting of a pardon, and by what mechanism, for which offenses, and under what circumstances, are matters resting within the sovereign decision-making powers of that state. Indeed, it is not inconceivable that a state may choose to preclude, by any mechanism, the granting of pardons in cases involving aggravated criminal offenses. Applying the reasoning employed in *Cevallos*, such aggravated offenses would cease to be crimes for the purpose of section 241(a)(4) deportability

because a pardon from a qualifying pardoning authority would be unavailable. We do not believe that Congress intended this result.

In our view, the availability or unavailability of a pardon under state or federal law, or the existence or nonexistence of a qualifying pardoning authority, has no bearing on the separate question of whether an offense constitutes a "crime" for the purpose of deportability under section 241(a)(4) of the Act. Only after a determination has been made that a crime has been committed subjecting an alien to deportability under section 241(a)(4) of the Act are the pardon provisions of section 241(b)(1) of the Act triggered. If a state has authorized the granting of a pardon for such a crime, the inquiry then is directed to whether the pardon satisfies the requirements of section 241(b)(1) of the Act, i.e., the pardon is full, unconditional, and executive in nature, having been issued by the President of the United States or the Governor of a state. If the pardon fulfills all of the statutory requirements of the Act, then there ceases to be a crime on which to base deportability under section 241(a)(4) of the Act.

Based on the foregoing discussion, we now overrule our holding in *Matter of Cevallos, supra*. The respondent's argument that the proceedings against him should be terminated for lack of having been convicted of a "crime" is accordingly rejected.

As the respondent has failed to demonstrate that the automatic first offender pardon he received satisfies the pardon requirements of section 241(b)(1) of the Act, he is ineligible as a matter of law for the relief he seeks. Therefore, no purpose would be served by reopening the proceedings.[2] Accordingly, the motion will be denied.

**ORDER:** The motion is denied.

---

[2] The Service summarily references in its brief the subsidiary question of whether the Louisiana State constitution's automatic pardon provision constitutes a state counterpart to the federal first offender statute. We note that the respondent has neither raised this issue nor responded to it in his brief. In light of our decision to deny the motion on the grounds set forth above, we find it unnecessary to address this issue.