# United States Court of Appeals
## For the First Circuit

No. 18-1823

RICHARD MARVIN THOMPSON,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Gregory Romanovsky, with whom Romanovsky Law Offices was on brief, for petitioner.

William M. Tong, Attorney General of Connecticut, with whom Jane Rosenberg, Assistant Attorney General, and Clare Kindall, Solicitor General, were on brief, as amicus curiae for the State of Connecticut.

Trina Realmuto, Kristin Macleod-Ball, Emma Winger, and American Immigration Council, as amicus curiae for the American Immigration Council.

Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Joseph H. Hunt, Assistant Attorney General, Civil Division, and Keith I. McManus, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

May 21, 2020

**TORRUELLA**, **Circuit Judge**.  Petitioner Richard Marvin Thompson ("Thompson") appeals the Board of Immigration Appeals' ("BIA") denial of his motion to reopen sua sponte his immigration proceedings, alleging that the BIA committed a clear legal error. Thompson asks this Court to exercise jurisdiction to review whether the BIA clearly erred when it determined that he was not entitled to relief from deportation under section 237(a)(2)(A)(vi) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(vi) (the "Pardon Waiver Clause"), because a pardon issued by the Connecticut Board of Pardons and Paroles is "not effective for purposes of establishing entitlement to" a waiver of deportation. Because we find that this Court has jurisdiction to review this colorable legal question and because, here, the BIA departed from its settled course of adjudication, we vacate the decision of the BIA and remand for further proceedings consistent with this opinion.

## I.

Thompson is a citizen of Jamaica.  In 1997, at the age of fourteen, he was admitted to the United States as a lawful permanent resident.  When he was seventeen years old, Thompson was arrested and charged with second-degree assault, a felony in violation of Connecticut General Statute § 53a-60, to which he pleaded guilty in Connecticut state court in 2001.  He received a

suspended sentence and three years' probation.  Without incident, Thompson completed the terms of his probation, received his GED, and worked for over ten years as a commercial operator.

Based on his 2001 conviction, in March 2012, the United States Department of Homeland Security initiated removal proceedings against Thompson charging him as removable pursuant to: (1) 8 U.S.C. § 1227(a)(2)(A)(i), for having committed a crime of moral turpitude within five years after admission and for which a term of imprisonment of one year or more could be imposed; and (2) 8 U.S.C. § 1227(a)(2)(A)(iii), for having committed an aggravated felony.  Prior to his deportation hearing, Thompson applied to the United States Citizenship and Immigration Services ("USCIS") for derivative citizenship through his U.S.-citizen father.  USCIS denied the application, and an Immigration Judge adopted the USCIS's reasoning, later affirmed by the BIA and this Court in Thompson v. Lynch, that Thompson did not derive citizenship from his father because Thompson's parents had never been legally married and were thus never legally separated as required by 8 U.S.C. § 1432(a) (repealed 2000).  See Thompson v. Lynch, 808 F.3d 939, 940-41 (1st Cir. 2015). Thompson subsequently filed two unsuccessful motions to reopen with the BIA.

On March 14, 2018, detained and appearing pro se, Thompson filed the present motion to reopen and terminate his

removal proceedings. Thompson's motion requested that the BIA exercise its sua sponte authority to reopen proceedings because he had been granted a full and unconditional pardon by the Connecticut Board of Pardons and Paroles for his 2001 conviction, qualifying him for relief under the Pardon Waiver Clause.

On August 7, 2018, the BIA denied the motion. The BIA found Thompson's motion untimely and number-barred, see 8 C.F.R. § 1003.2(c), and "decline[d] to exercise [its] sua sponte authority." The BIA explained that Thompson had failed to show that he was eligible for a pardon waiver, which would otherwise automatically waive his removability. The BIA acknowledged that it "h[as] long recognized that in some states, the supreme pardoning power may rest with some other executive body," but that "the [Connecticut] Board of Pardons and Paroles is a legislatively derived body." Therefore, it reasoned that "even though the Board of Pardons and Paroles is the supreme pardoning power in Connecticut, that power is not executively derived, and so it is not effective for purposes of establishing entitlement to [a pardon waiver under] section 237(a)(2)(A)(vi) of the [INA]." The BIA added that Thompson's uncertified photocopy of his pardon failed to meet "his heavy burden" for reopening. Thompson timely appealed.

## A. Standard of Review and Jurisdiction

We begin by addressing our jurisdiction to review Thompson's claim that the BIA committed legal error when it denied his motion to reopen sua sponte. We first note that "a motion to reopen removal proceedings is a disfavored tool." Gyamfi v. Whitaker, 913 F.3d 168, 172 (1st Cir. 2019) (quoting Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015)). To the extent we have jurisdiction, we generally review the BIA's decision on a motion to reopen for abuse of discretion. Id.; see 8 U.S.C. § 1252(a)(1), (a)(5). An abuse of discretion occurs if the BIA "committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Cabas v. Barr, 928 F.3d 177, 181 (1st Cir. 2019) (quoting Xue Su Wang v. Holder, 750 F.3d 87, 89 (1st Cir. 2014)). Within this deferential framework, "[w]e review questions of law de novo." Bolieiro v. Holder, 731 F.3d 32, 36 (1st Cir. 2013) (alterations ours).

The BIA possesses discretionary authority to grant or deny a motion to reopen pursuant to 8 C.F.R. § 1003.2(a). The regulation states:

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a

-6-

> motion to reopen even if the party moving has made
> out a prima facie case for relief.

8 C.F.R. § 1003.2(a).

Until Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C., 110 Stat. 3009-546, there were no time limits for requesting the reopening of immigration proceedings. By instituting time limits and number restrictions, IIRIRA "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." Kucana v. Holder, 558 U.S. 233, 249 (2010) (alteration in original) (quoting Dada v. Mukasey, 554 U.S. 1, 14 (2008)). The statute codified the right to file one motion to reopen within ninety days of the date of entry of a final order of removal, with a few narrow exceptions. See 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i). A motion to reopen that comports with the time and number requirements is subject to judicial review under the standard laid out above. See Guerrero v. Holder, 766 F.3d 122, 126 (1st Cir. 2014).

When a motion falls outside of the timing and number restrictions imposed by IIRIRA and does not fit into one of the statutory exceptions, the only way for the petitioner to reopen proceedings is to request that the BIA reopen them sua sponte, i.e., "on its own motion" (nomenclature that we admit is confusing). See Lemus v. Sessions, 900 F.3d 15, 18 (1st Cir.

-7-

2018) (citing 8 C.F.R § 1003.2(a)); Bonilla v. Lynch, 840 F.3d 575, 585 (9th Cir. 2016). The BIA will only grant a motion sua sponte if it is "persuaded that the respondent's situation is truly exceptional." In re G-D-, 22 I. & N. Dec. 1132, 1134 (B.I.A. 1999).

In Luis v. INS, we held that we lacked jurisdiction to review the BIA's decision on a motion to reopen sua sponte "because the decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion." 196 F.3d 36, 40 (1st Cir. 1999). This is because, in the absence of "judicially manageable standards," we "would have no meaningful standard against which to judge the agency's exercise of discretion." Id. (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)). See 5 U.S.C. § 701(a)(2) (disallowing judicial review of agency action when said action "is committed to agency discretion by law"). We have affirmed this general rule from Luis many times. See Gyamfi, 913 F.3d at 176; Reyes v. Sessions, 886 F.3d 184, 188 (1st Cir. 2018); Ramírez-Matías v. Sessions, 871 F.3d 65, 68 (1st Cir. 2017); Guerrero, 766 F.3d at 126; Neves v. Holder, 613 F.3d 30, 35 (1st Cir. 2010). Still, we have never decisively answered the questions presented here: whether this Court has jurisdiction to review motions to reopen sua sponte for the limited purpose of rectifying legal or constitutional errors by the BIA about whether

-8-

it has the authority to exercise its discretion or whether 8 U.S.C. § 1252(a)(2) allows this Court to assert jurisdiction over a challenge to such an error, because it is a legal one.  See Lemus, 900 F.3d at 19.  Let us explain.

In 2005, several years after we announced our holding in Luis, Congress passed the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302.  See Ramírez-Matías, 871 F.3d at 68.  While IIRIRA had earlier barred judicial review of "most discretionary decisions or actions of the Attorney General and Secretary of Homeland Security . . . under a particular statutory subchapter," Bonilla, 840 F.3d at 587 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)), the REAL ID Act clarified:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).  Thereby, denials of discretionary relief, 8 U.S.C. § 1252(a)(2)(B), and final orders of removal against criminal aliens, 8 U.S.C. § 1252(a)(2)(C), were explicitly made reviewable when the petitioner raised constitutional claims or questions of law.

It is clear to us that the plain language of § 1252(a)(2)(D) evidences congressional intent to render purely

-9-

discretionary decisions reviewable for legal error. This suggests that Congress did not intend such decisions to evade review simply because they are discretionary. On the contrary, § 1252(a)(2)(D) suggests that when the BIA makes a discretionary decision on the basis of a legal rationale, there is law for the court to apply, and it is the duty of a reviewing court to do so. Therefore, while the rule we announced in Luis generally still holds (i.e., in the absence of a meaningful legal standard, we lack jurisdiction to review the BIA's decision of whether to reopen a case sua sponte), § 1252(a)(2)(D) acknowledges that sometimes there are judicially manageable standards to apply even when the relief sought is purely discretionary -- as is the case with motions to reopen sua sponte.

By its terms, § 1252(a)(2)(D) states that no provision of Chapter 12 of Title 8 of the INA limiting judicial review shall be construed to deprive the appropriate appellate court of jurisdiction over legal and constitutional challenges. The provision furnishing the Attorney General with the authority to create the regulations that provide for sua sponte reopening is located within INA Chapter 12. See 8 U.S.C. § 1103(a); see also Kucana, 558 U.S. at 254 (Alito, J., concurring) ("[I]t seems clear that § 1003.2, at least insofar as it gave the Attorney General the discretionary authority that he exercised in this case, is

grounded on authority conferred under Subchapter I of Chapter 12 of Title 8." (emphasis removed)).[1]  There would seem to be a strong argument that motions to reopen, even of the sua sponte nature, come within the scope of § 1252(a)(2)(D).

While this Court has thus far avoided deciding whether § 1252(a)(2)(D) allows courts of appeals to conduct a limited review of the BIA's decisions on motions to reopen sua sponte, several other circuits have found that it does.  See Bonilla, 840 F.3d at 587 ("The recognition in § 1252(a)(2)(D) that legal or constitutional issues are reviewable even when the statute makes the underlying decision discretionary is reflective of a general recognition that there is no preclusion of such review if otherwise ordinarily available."); Salgado-Toribio v. Holder, 713 F.3d 1267, 1271 (10th Cir. 2013) ("We do have jurisdiction to review 'constitutional claims or questions of law' raised in a petition for review." (quoting 8 U.S.C. § 1252(a)(2)(D))); Cevilla v.

---

[1]  The government's suggestion that judicial review of motions to reopen sua sponte "circumvent[s] the time and numerical limits Congress imposed on motions to reopen" strikes more at the regulation permitting sua sponte reopening, 8 C.F.R. § 1003.2(a), which predates the codification of 8 U.S.C. § 1229a, rather than at limited judicial review.  As we are to assume that Congress legislated with the knowledge of the existing scheme and awareness that the BIA was authorized to reopen cases beyond the statutory time and number limits, we are not persuaded that limited judicial review contravenes congressional intent.  See Kucana, 558 U.S. at 239.

Gonzales, 446 F.3d 658, 660 (7th Cir. 2006) ("[T]he general 'no law to apply' principle of judicial review of administrative action has been superseded in the immigration context by 8 U.S.C. § 1252(a)(2), as amended by the REAL ID Act in May 2005."); see also Nawaz v. Holder, 314 F. App'x 736, 737 (5th Cir. 2009) ("While we do not have jurisdiction to consider [petitioner]'s non-constitutional challenges to the BIA's refusal to reopen his removal proceedings sua sponte, we retain jurisdiction to consider constitutional challenges that were raised before the BIA." (citing 8 U.S.C. § 1252(a)(2)(D))); Tamenut v. Mukasey, 521 F.3d 1000, 1005 (8th Cir. 2008) (noting jurisdiction generally "over any colorable constitutional claim").

Until now, we have deferred answering the question of jurisdiction in the absence of any colorable constitutional or legal challenges. See Gyamfi, 913 F.3d at 177 ("[E]ven if § 1252(a)(2)(D) serves as a basis for jurisdiction, [petitioner] has not set forth any colorable claims."); Lemus, 900 F.3d at 19 ("Section 1252(a)(2)(D) 'only arguably applies to a petitioner's constitutional or legal challenges if they are colorable' . . . and the [petitioner]s' are not." (citing Reyes, 886 F.3d at 188)); Ramírez-Matías, 871 F.3d at 69 ("[W]e don't have to decide what to do about the issue now. The problems with [petitioner]'s appeal are titanic, and the jurisdictional question is just the tip of

-12-

the proverbial iceberg." (citation omitted)). But, decisions on motions to reopen sua sponte appear to be the sort of decision that Congress authorized appellate courts to review for legal or constitutional error via its instruction at § 1252(a)(2)(D) to construe even discretionary agency decisions authorized by Chapter 12 of Title 8 of the INA as subject to limited judicial review.

Even insofar as the government is correct that § 1252(a)(2)(D) does not strictly govern, Luis did not hold that the no-law-to-apply ground for finding no reviewability applied even in a case in which the BIA gives as its reason for not exercising its discretion what appears to be a mistaken view of a legal bar to its exercise of that discretion. Nor does any of our post-Luis precedent clearly so hold. Certainly, the government identifies no such case.

Moreover, in accord with the conclusion that we have not so held, Luis itself cited to Heckler v. Chaney, see Luis, 196 F.3d at 40-41 (quoting Chaney, 470 U.S. at 830-33), which construed the committed-to-agency-discretion-by-law exception to reviewability in the Administrative Procedure Act and, in doing so, explicitly declined to extend its holding to the situation where an agency declines "to institute proceedings based solely on the belief that it lacks jurisdiction," see Chaney, 470 U.S. at 833 n.4. Thus, there is no reason to construe this regulation to

be more resistant to review, especially given the general presumption of reviewability. See Kucana, 558 U.S. at 251-52 (applying the "presumption favoring judicial review of administrative action" to allow review over motions to reopen).

The enactment of § 1252(a)(2)(D) and its exception allowing for the review of questions of law even as to discretionary decisions by the BIA further supports the conclusion that it would be wrong to conclude that a court may not review the BIA's erroneous legal determination that there is a legal barrier to its granting of a motion to reopen sua sponte. Even if that part of § 1252 does not govern a motion to reopen sua sponte, we see no reason to construe the provision allowing such motions in a manner that would permit legal errors regarding the existence of discretion to grant these motions to be insulated from review when Congress has made clear that other such legal errors concerning other exercises of discretion are reviewable. And we credit Thompson with raising a colorable claim of such a legal error.

Thus, we join the Second, Third, Fifth, Seventh, Eighth, and Ninth Circuits in holding that we have limited jurisdiction to review constitutional claims[2] or errors of law that arise in

---

[2] The Fifth and Eighth Circuits have only expressed their jurisdiction as to constitutional challenges. See Nawaz, 314 F. App'x at 737; Tamenut, 521 F.3d at 1005.

-14-

motions to reopen sua sponte.[3]  See, e.g., Pllumi v. Att'y Gen. of U.S., 642 F.3d 155, 160 (3d Cir. 2011) ("[W]hen presented with a BIA decision rejecting a motion for sua sponte reopening, we may exercise jurisdiction to the limited extent of recognizing when the BIA has relied on an incorrect legal premise."); Mahmood v. Holder, 570 F.3d 466, 469 (2d Cir. 2009) ("[W]here the Agency may have declined to exercise its sua sponte authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail, remand to the Agency for reconsideration in view of the correct law is appropriate.").  We also note that even one of the two circuits that has held otherwise has not foreclosed the possibility that review could lie when the claimed legal error is constitutional in nature.  See Butka v. U.S. Att'y Gen, 827 F.3d 1278, 1285 (11th Cir. 2016).  We see no basis, however, for limiting the legal errors regarding a limit on the BIA's discretion to grant such a motion to those legal errors that concern the Constitution rather than those that concern the extent of its legal power more generally.  When the BIA's denial of a motion to reopen rests on a legal error, it is appropriate to

---

[3]  We note that the Sixth and Eleventh Circuits have taken the opposite tack, finding that there is "simply no law to apply," when asked to review motions to reopen sua sponte.  Rais v. Holder, 768 F.3d 453, 464 (6th Cir. 2014) (internal quotation marks omitted); see Butka v. U.S. Att'y Gen., 827 F.3d 1278, 1286 n.7 (11th Cir. 2016).

"remand to the BIA so it may exercise its authority against the correct legal background." Bonilla, 840 F.3d at 588 (internal quotation marks omitted) (quoting Pllumi, 642 F.3d at 160).

The government argues, in protest to our jurisdiction, that the BIA's decision with respect to a motion to reopen "reflect[s] only that in the B[IA]'s judgment the case does not constitute a truly exceptional situation" and does "not necessarily reach[] the merits of any new legal argument." The government bases its contention on a passage from ICC v. Brotherhood of Locomotive Engineers, 482 U.S. 270 (1987), but the Court there was explaining its construction of a statutory provision governing the ICC's "authority to reopen and reconsider its prior actions," id. at 277, which is not at issue here, and did not hold that review for legal error would be unavailable to a petitioner whose motion to reopen was premised on new developments, id. at 278-280.

The decision we have been asked to review here reached the merits of petitioner's claim and announced a legal rule limiting discretion that we are well-positioned to review. So, having found jurisdiction over colorable claims of legal error, we proceed to assess the merits of Thompson's legal argument.

## B. Pardon Waiver Clause

Thompson's position is that "the BIA based [its] discretionary decision on a misinterpretation of the law." Thompson received "a full, complete, absolute and unconditional pardon" for his 2001 conviction from the Connecticut Board of Pardons and Paroles. Contained in the same subsection of the INA as the clauses providing for the deportation of an alien who has been convicted of certain criminal offenses, see 8 U.S.C. § 1227(a)(2)(A)(i)-(iv), the Pardon Waiver Clause states that those clauses

> shall not apply in the case of an alien with respect to a criminal conviction if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States.

Id. § 1227(a)(2)(A)(vi). A pardon waiver has the effect of automatically canceling removal. Here, the BIA confirmed that Thompson's "pardon would waive his removability" if it qualified as a pardon under the Pardon Waiver Clause. But the BIA found that "even though the [Connecticut] Board of Pardons and Paroles is the supreme pardoning power in Connecticut, [its] power is not executively derived, and so it is not effective for purposes of establishing entitlement to section 237(a)(2)(A)(vi) of the Act[, the Pardon Waiver Clause]." Thus, Thompson's pardon was determined to be "legislative [in] nature." Thompson argues, among other things, that this was a legal error "inconsistent with

-17-

the BIA's settled course of adjudication when interpreting the Pardon Waiver Clause."

We start by addressing what is meant by the phrase "settled course of adjudication." If an agency, like the BIA,

> announces and follows——by rule or by settled course of adjudication——a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as "arbitrary, capricious, [or] an abuse of discretion" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

INS v. Yueh-Shaio Yang, 519 U.S. 26, 32 (1996) (alteration in original) (holding that the INS had not departed from its settled policy of disregarding entry fraud when it considered eligibility for a waiver of deportation under 8 U.S.C. § 1251(a)(1)(H)). We have held that when "an administrative agency decides to depart significantly from its own precedent, it must confront the issue squarely and explain why the departure is reasonable," the obvious goal being to avoid arbitrary agency action. Dávila-Bardales v. INS, 27 F.3d 1, 5 (1st Cir. 1994) (citing Congreso de Uniones Indus. de P.R. v. NLRB, 966 F.2d 36, 39 (1st Cir. 1992); Shaw's Supermarkets, Inc. v. NLRB, 884 F.2d 34, 41 (1st Cir. 1989)). A "zigzag course is not open to an agency when . . . the agency has failed to explain why it is changing direction (or even to acknowledge in the later decision that it is detouring from a beaten path)." Dávila-Bardales, 27 F.3d at 5 (citing Shaw's

-18-

Supermarkets, Inc., 884 F.2d at 36). Instead, an agency is expected to "apply the same basic rules to all similarly situated supplicants." Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996).

Thompson charges the BIA with departing from its settled course of adjudication when interpreting the Pardon Waiver Clause as its reasoning in this case is inconsistent with prior BIA decisions accepting Connecticut pardons, as well as functionally identical pardons issued by the Georgia Board of Pardons and Paroles, for purposes of the Pardon Waiver Clause.[4] He argues that the BIA's decision was based on a misunderstanding of its own caselaw interpreting "legislative pardons," which he agrees are insufficient under the Pardon Waiver Clause. In reversing course, Thompson posits, the BIA did not explain why it should matter if a pardoning board is created by constitution or legislation. Thompson contends that the BIA, having "constrained its discretion through a settled course of adjudication" with respect to pardon

_____

[4] Participating as amicus curiae, the State of Connecticut similarly points to the BIA's

> long history of properly interpreting and applying Congress' intent to respect all discretionary and individualized executive pardons . . . manifested today in the BIA's respect for the wide variety of executive pardons granted by states across the country . . . [so that] the mistaken interpretation at issue here, which uniquely prejudices the state of Connecticut and its residents, [is] all the more anomalous, puzzling, and unjustifiable.

-19-

waivers, acted arbitrarily when it deemed Connecticut pardons insufficient for purposes of the statute.[5]

The government counters the "settled course of adjudication" argument by pointing out that the BIA "has never addressed in a published decision whether a pardon from a legislatively derived body constitutes a pardon for purposes of the pardon waiver" and having "identified only a single, seventeen-year-old unpublished [BIA] decision" recognizing a Connecticut pardon, see Murphy, BIA A037 412 467 (2002) (deciding that a pardon from the Connecticut Board of Pardons and Paroles sufficed to suspend deportation under the Pardon Waiver Clause because "[t]he B[IA] ha[d] construed the pardon provision . . . to apply to the supreme pardoning power"),[6] Thompson and Amicus Curiae

_____

[5] Thompson's argument regarding the settled course of adjudication is wholly distinguishable from the one rejected in Tamenut, where the Eighth Circuit found that the BIA's "acknowledge[ment of] the existence of its authority to reopen sua sponte in what it deems to be 'exceptional situations' is not sufficient to establish a meaningful standard for judging whether the BIA is required to reopen proceedings on its own motion." 521 F.3d at 1005 (citing Calle-Vujiles v. Ashcroft, 320 F.3d 472, 474-75 (3d Cir. 2003)). See also Sang Goo Park v. Att'y Gen. of U.S., 846 F.3d 645, 655 (3d Cir. 2017) (confirming that a BIA denial premised on a lack of exceptional circumstances does not automatically confer jurisdiction for appellate review). Rather, Thompson challenges the BIA's legal conclusion that "he is [not] entitled to a pardon waiver," given the BIA's own interpretation of the Pardon Waiver Clause.

[6] Relying on Matter of Nolan, 19 I. & N. Dec. 539, 541-42 (B.I.A. 1988), and Matter of Tajer, 15 I. & N. Dec. 125, 126 (B.I.A. 1974) -- two cases also cited by the BIA in Thompson's case -- the BIA

-20-

American Immigration Council fail to persuade that the BIA has set out a contrary policy than the one followed by the BIA here. We disagree.

First, undermining the government's suggestion that the BIA's decision to accept a Connecticut pardon in Murphy was a historical anomaly, the BIA decided Walton, BIA A041 657 485 (2019), shortly after this case was argued before us. In an unpublished decision, the BIA found "the respondent's pardon by the Connecticut Board of Pardons and Paroles [to] ha[ve] the effect of an executive pardon."[7] The BIA deemed the circumstances in Walton, which are almost identical to those presented here, to be the sort warranting the BIA's exercise of its sua sponte authority. In that case, the respondent had been found removable in 2012 under sections 237(a)(2)(A)(ii) and (iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii), following two convictions in Connecticut state court. On January 14, 2019, the Connecticut Board of Pardons and Paroles granted the respondent a full and unconditional pardon for her prior offenses, and subsequently, the BIA, by way of its sua sponte authority, reopened and terminated her immigration

in Murphy reached the opposite conclusion as it did here.

[7] The BIA denied DHS's request for reconsideration of its decision on May 12, 2020, affirming that a Connecticut pardon "should be credited as an executive pardon."

-21-

proceedings. Acknowledging some deference to the Connecticut Attorney General's view of its own state laws, the BIA in Walton credited the state's explanation that the respondent's pardon should be viewed as an "executive pardon" under Connecticut state law. The BIA recognized the colonial origin of Connecticut's pardoning power, which was "originally executive in nature," and found that since the Governor appoints the Board, see Conn. Gen. Stat. § 54-124a(a)(1), the "executive aspect" of Connecticut pardons was "retained."[8]

In response to this recent, on-point decision, the government, otherwise conceding the similarity between Thompson and the petitioner in Walton, argues that Walton is unpublished and non-precedential. Furthermore, it asserts that "the existence of a 'settled course' [of adjudication] cannot be lightly inferred," citing Menéndez-González v. Barr, 929 F.3d 1113, 1118 (9th Cir. 2019), so Walton does not materially alter things for Thompson. In Menéndez-González, the Ninth Circuit found it lacked

---

[8] In Connecticut, the power to pardon resides with the sovereign -- once the monarch and now the people. See S. Rep. No. 98-R-0255 (Conn. 1998). Although the citizens of Connecticut did not assign the pardon power in their constitution, Connecticut's legislature, the General Assembly, retained this power, which had been formerly enshrined in Connecticut's colonial charter. See id. Subsequently, in 1883, the General Assembly transferred this power to the Board of Pardons and Parole. See id.; Palka v. Walker, 198 A. 265, 266 (Conn. 1938).

jurisdiction to review the denial of a motion to reopen when the petitioner, claiming that the BIA had departed from its settled course of adjudication, failed to present a colorable legal or constitutional question for review. Id. at 1119. There, the petitioner argued that the BIA often granted motions to reopen sua sponte after the vacatur of the alien's conviction, thereby "eliminating the discretion that the BIA would otherwise have to examine the specifics of an individual petitioner's case," and petitioner was, therefore, entitled to the reopening of his immigration proceedings sua sponte. Id. at 1118. The Ninth Circuit clarified that, by citing a handful of unpublished decisions, petitioner had failed to allege a pattern by which the BIA constrained its authority to require it to reopen his case. Id. at 1118-19. We have no trouble distinguishing Menéndez-González from the case before us.

Thompson, relying on several published and unpublished BIA decisions for support, argues that the BIA's choice here to find that a Connecticut pardon does not qualify under the Pardon Waiver Clause was arbitrary and a departure from the BIA's settled course, not that the BIA is necessarily required to reopen his case sua sponte. We agree with the government that two unpublished BIA decisions do not necessarily evidence a BIA policy that Connecticut pardons are sufficient for purposes of the Pardon

-23-

Waiver Clause, although we also point out that "we see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases." Dávila-Bardales, 27 F.3d at 5-6; see also id. at 5 ("[T]he prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation, raises . . . concerns about arbitrary agency action . . . ."). Nevertheless, as Thompson clearly argues, the BIA's practice of accepting pardons from the supreme pardoning authority in a given state, even if that authority is conferred by statute, transcends these two cases. Cf. Sang Goo Park v. Att'y Gen. of U.S., 846 F.3d 645, 654 (3d Cir. 2017) ("[O]ne favorable exercise of discretion does not a settled course make.").

Thompson argues, and we agree, that the BIA has repeatedly found that the relevant distinction between "legislative pardons" and "executive pardons" is based on the nature of the pardon and whether the pardon is conferred automatically, not whether the source of the pardon authority is found in statute or the state's constitution. Turning to BIA precedent, it is not difficult to trace the BIA's course of adjudication on this issue. It is well-settled BIA policy that to qualify for a pardon waiver, a full and unconditional pardon

-24-

given to an alien "must be of an executive rather than a legislative nature." 101 A.L.R. Fed. 668 (1991). In 1952, Congress modified the Pardon Waiver Clause to make this distinction.[9] In Matter of R--, the BIA addressed the change in law and found that "Congress ha[d] manifested an express intention to grant exemption from deportation only to those aliens who have obtained an executive pardon." 5 I. & N. Dec. 612, 619 (B.I.A. 1954). It concluded that respondent's legislative pardon, obtained automatically after he completed the punishment for the crime he was convicted of, did not qualify under the Pardon Waiver Clause. Id. (citing S. Rep. No. 81-1515, at 637 (1950) (defining legislative pardons as "pardons under which an alien is pardoned by operation of law in several States after completion of his sentence.")). A few years later in Matter of G--, the BIA further elucidated its view of the change to the Pardon Waiver Clause, stating "that Congressional rejection of the legislative pardon was based on its automatic application to one who had served his sentence irrespective of the merits of the case." 9 I. & N. Dec. 159, 162 n.1 (B.I.A. 1960). To the extent the BIA defined the term executive pardon, it did so by way of its rejection of

---

[9] The Pardon Waiver Clause in effect today, 8 U.S.C. § 1227(a)(2)(A)(vi), remains substantively the same as the former Section 241(b)(1) of the INA of 1952, 8 U.S.C. § 1251(b)(1).

-25-

automatic pardons issued by operation of law.  Rejection of this so-called legislative pardon did not depend on whether it was conferred by statute or constitution.  Compare Matter of R--, 5 I. & N. Dec. at 618-19 (determining that Pennsylvania's pardon statute, which pardons all who endure the punishment imposed for a class of crimes, was a "legislative pardon"), with Matter of Nolan, 19 I. & N. Dec. 539, 544 (1988) (determining that "although provided for under a state constitution rather than by statute, [the automatic pardon] is akin to the legislative pardon which Congress clearly rejected" (emphasis added)).

Furthermore, in Matter of Nolan, the BIA "recognized the fact that in some instances, the supreme pardoning power may rest with an executive or executive body other than the President of the United States or the Governor of a state."  19 I. & N. Dec. at 542 (citing Matter of Tajer, 15 I. & N. Dec. 125, 126 (B.I.A. 1974); Matter of K--, 9 I. & N. Dec. 336 (B.I.A. 1961); Matter of C-R-, 8 I. & N. Dec. 59 (B.I.A. 1958); Matter of D--, 7 I. & N. Dec. 476 (B.I.A. 1957); Matter of T--, 6 I. & N. Dec. 214 (B.I.A. 1954)).  The BIA cited Matter of Nolan, as well as the long list of precedent it relies on, with approval in its decision in Thompson's case.  Yet, taken collectively, these cases exemplify a BIA policy contrary to the one announced in its decision below, i.e., that a pardon issued by the supreme pardoning authority in

the state of Connecticut is not effective because the source of that authority is a statute. Matter of T--, 6 I. & N. Dec. 214, serves as an example. There, the BIA accepted a full and unconditional pardon by the Governor of Hawaii, despite that authority being statutorily derived. Id. at 215-16. That "[t]he pardoning power of the Governor of Hawaii stem[med] from . . . statutory sources" did not render the pardon legislative. Id. at 215.

As Thompson points out, both Matter of D--, 7 I. & N. Dec. 476, and Matter of Tajer, 15 I. & N. Dec. 125, deal with pardons from the Georgia State Board of Pardons and Paroles, which are substantively identical to a Connecticut pardon. In Matter of D--, the BIA determined that "an executive pardon duly granted by [the] supreme authority" in the state of Georgia, the Georgia State Board of Pardons and Paroles, satisfied the Pardon Waiver Clause "limiting the grant of a pardon to the President of the United States or the Governor of a State." 7 I. & N. Dec. at 477. The BIA found "it was not the intent of Congress to fail to recognize any executive pardon granted by a State which has a constitutional provision for executive pardons to be issued by other than the Governor of the State." Id. The BIA affirmed its acceptance of pardons issued by the Georgia State Board of Pardons and Paroles in Matter of Tajer, explaining that "[t]he pardon . . .

under consideration is the <u>only</u> unconditional executive pardon that can be obtained in the state of Georgia" and reiterating that the purpose of the Pardon Waiver Clause was "to eliminate the effectiveness of a legislative pardon" for the purposes of the statute. 15 I. & N. Dec. at 126 (emphasis added). While the government would have us read the phrase referring to a "constitutional provision for executive pardons" as a BIA requirement that the state's supreme pardoning authority be conferred by constitution, such a requirement would conflict with <u>Matter of T--</u>, 6 I. & N. Dec. at 215, as well as <u>Matter of C-R-</u>, 8 I. & N. Dec. at 63 (accepting a pardon issued pursuant to a Nebraska statute granting the mayor pardon authority for local violations), and <u>Matter of K--</u>, 9 I. & N. Dec. at 339 (accepting a pardon from the United States High Commissioner for Germany, notwithstanding that the pardoning power was derived from an executive order). Therefore, we refuse to read it as the government proposes.[10]

---

[10] The government also suggests that the statute is unambiguous and applies only to presidential and gubernatorial pardons, all the while still pressing that the relevant attribute disqualifying Connecticut pardons is that the pardon authority is legislatively conferred. The government does not seem to be suggesting that we abrogate the BIA's policy of accepting "executive pardons." As we limit our holding to correcting the BIA's unacknowledged and seemingly arbitrary departure from its settled course of adjudication, we avoid reaching the proper interpretation of the Pardon Waiver Clause directly, noting that this circuit has not addressed the appropriate degree of deference afforded to an

Instead, we agree with Thompson (and the BIA in Walton) that Connecticut pardons and Georgia pardons are substantively identical, notwithstanding that Georgia's pardoning power is conferred by constitution. Both Boards of Pardons and Paroles enjoy complete discretion to issue full and unconditional pardons through a deliberative process. See Conn. Gen. Stat. § 54-124a and Georgia Const. Art. IV, Sec. 2, para. 2; see also McLaughlin v. Bronson, 537 A.2d 1004, 1007 (Conn. 1988) (describing the Connecticut "board['s] unfettered discretion in making its pardon and commutation decisions" (citing Bd. of Pardons v. Dumschat, 452 U.S. 458, 466 (1981))). Like in Georgia, the Governor of Connecticut appoints the board members, who are confirmed by the legislature. See Conn. Gen. Stat. § 54-124a. The State of Connecticut maintains (and the BIA accepted in Walton) that the Connecticut Board is an executive agency, and that under Connecticut law, someone who has received a full and unconditional pardon has not been convicted of any crime. Thus, when the Board exercised its discretion to grant Thompson a "full, complete, absolute and unconditional pardon," his conviction and arrest were erased, according to Connecticut law. See Conn. Gen. Stat.

---

unpublished BIA decision, like the one before us, see Vásquez v. Holder, 635 F.3d 563, 567 n.6 (1st Cir. 2011) (citing De León-Ochoa v. Att'y Gen. of U.S., 622 F.3d 341, 349-51 (3d Cir. 2010)).

§ 54-142a(e)(3).  According to the BIA's precedent, that would qualify for relief under the Pardon Waiver Clause.

In fact, contrary to the government's suggestion that the BIA's decision here was not a break with its past published precedent, the BIA as early as 1958 declared in a published opinion that "[t]hat portion of section 241(b) of the Immigration and Nationality Act limiting the grant of an effective pardon to the President of the United States or the governor of a state has been interpreted to include a pardon granted by a state which has statutory provision for executive pardons to be issued by other than the governor of the state." Matter of C-R-, 8 I. & N. Dec. at 61-62.  In that case, the BIA found that "the unconditional pardon granted the respondent under the legislation provision" at issue -- a statute enabling mayors of certain cities to pardon individuals convicted of municipal offenses -- "is an effective pardon" for the purpose of the Pardon Waiver Clause.  Id. at 63. It did so in part because, notwithstanding the fact that the mayor was not a governor or the president and the fact that his authority was derived from legislation, he was nevertheless "the supreme pardoning authority in the case of a conviction under a city ordinance of his municipality," as his pardoning authority in this respect was not coextensive with that of any other official.  Id. As amicus Connecticut points out, the same is true of the

-30-

Connecticut Board of Pardons and Paroles here. See Conn. Gen. Stat. § 54-130a; McLaughlin, 537 A.2d at 1006-07 ("In Connecticut, the pardoning power is vested in the legislature[,] which has delegated its exercise to the board of pardons." (internal citation omitted)).

The BIA has effectively constrained its discretion as to what suffices under the Pardon Waiver Clause. Even absent the about-face in Walton, we are persuaded that the BIA departed from its settled course of accepting full and unconditional pardons granted by a state's supreme pardoning authority when the pardon is executive, rather than legislative, in nature. The BIA's policy has been shaped by its prior decisions accepting pardons from authorities whose powers were conferred by statute and rejecting pardons that were not deliberative, even when constitutionally guaranteed. From these BIA decisions, it is evident that "executive in nature" does not require the power to pardon be presently inscribed in a state's constitution. As the BIA premised its denial of Thompson's motion to reopen on the insufficiency of a Connecticut pardon for purposes of the Pardon Waiver Clause, we remand to the BIA to determine whether to reopen Thompson's immigration proceedings sua sponte against the correct legal background.[11]

---

[11] The administrative record reflects that Thompson submitted the

Convinced that we have jurisdiction to review colorable legal and constitutional challenges to denials of motions to reopen sua sponte, we conclude that the BIA departed from its settled course of adjudication by deeming a pardon from the state of

---

minutes of his pardon waiver hearing with his motion to reopen and the original copy of his pardon certificate a few days later. We note that the BIA, nevertheless, found that "[w]ithout a certified photocopy, [Thompson had] not met his heavy burden of showing that his case should be reopened." On appeal, Thompson argues that the BIA's decision on this issue constituted legal error: he provided the BIA with an original copy; there was no requirement that he provide the BIA with a certified copy instead; and in fact, the authorities cited by the BIA purportedly in support of the proposition that certified copies are required do not indicate any such requirement. See 8 C.F.R. § 1003.2; INS v. Abudu, 485 U.S. 94 (1988); Matter of Coelho, 20 I. & N. Dec. 464 (B.I.A. 1992). Rather, Thompson posits (and we agree), these cases cited by the BIA deal with the heavy substantive burden that the petitioner must meet for reopening. In its response, the government ignores this nonfrivolous legal-error argument and offers nothing in defense of, or that might elucidate, the BIA's statement on this point. Thus, it is apparent to us that the government is not advancing this as a basis for denial, and we therefore need not address it and deem it waived. See W. Va. Coal Workers' Pneumoconiosis Fund v. Bell, 781 F. App'x 214, 226 (4th Cir. 2019) (Richardson, J., writing separately and announcing the judgment) ("[A]n appellee's wholesale failure to respond to a conspicuous, nonfrivolous argument in the appellant's brief ordinarily constitutes a forfeiture."); Alvarez v. Lynch, 828 F.3d 288, 295 (4th Cir. 2016); Cincinnati Ins. Co. v. E. Atl. Ins. Co., 260 F.3d 742, 747 (7th Cir. 2001). Judge Barron dissents solely as to this issue. In his view, the BIA's ruling as to the requirement to provide a certified photocopy must be vacated and remanded for consideration of Thompson's unchallenged argument that the requirement was impermissible because it deviated from settled agency practice, but the BIA should be permitted on remand to consider whether that requirement either accorded with that past practice or was otherwise justified.

Connecticut insufficient under the Pardon Waiver Clause, and we remand for further proceedings consistent with this opinion.

As a final matter, we address the Petitioner's Emergency Motion for Bail. Thompson articulates the risk that he faces while currently detained given the present pandemic and emphasizes the considerable length of time he has spent at the Etowah County Detention Center in Gadsden, Alabama -- the last stretch occurring during the pendency of this appeal.

First, we find that the issue of bail pending appeal is moot. See Pet'r's Emergency Mot. for Bail 3 ("Thompson asks this Court to exercise its inherent authority to admit petitioners to bail pending resolution of an appeal to order his immediate release from immigration custody." (citation omitted)).

Therefore, we construe Thompson's emergency motion for bail as a petition for a writ of habeas corpus and transfer it to the Northern District of Alabama, the district where Thompson remains confined.[12] See 28 U.S.C. § 2241(b); Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions

---

[12] In January 2019, Thompson filed a petition for writ of habeas corpus challenging his immigration detention in the Northern District of Alabama, which the district court dismissed without prejudice on September 30, 2019. See Thompson v. Horton, No. 4:19-cv-00120, 2019 WL 4750072 (N.D. Ala. Sept. 20, 2019).

-33-

challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); López-Marroquín v. Barr, 955 F.3d 759 (9th Cir. 2020). We note that the pressing Covid-19-related concerns that Thompson's motion raises are distinct from those previously presented to the district court in his prior habeas petition so that our transfer does not duplicate litigation currently pending before the Eleventh Circuit.

**Vacated and Remanded.**