# United States Court of Appeals
## For the First Circuit

No. 23-1857

FREDLY CHARLES,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Barron, <u>Chief Judge</u>,
Kayatta and Gelpí, <u>Circuit Judges</u>.

<u>Ira Sagiv Alkalay</u> for petitioner.
<u>Keith Ian McManus</u>, Assistant Director, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, with whom
<u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General,
Civil Division, and <u>Jessica E. Burns</u>, Senior Litigation Counsel,
Office of Immigration Litigation, were on brief, for respondent.

August 15, 2024

**KAYATTA**, <u>Circuit Judge</u>. Petitioner Fredly Charles challenges the Board of Immigration Appeals' ("BIA" or "the Board") denial of his motion to reopen his removal proceedings sua sponte. He alleges that the BIA legally erred by failing to consider evidence submitted with that motion. The BIA has wide latitude in determining whether to invoke its sua sponte authority. This court, in turn, has jurisdiction to review refusals to reopen sua sponte only to the extent that the Board commits legal error. Because we find that Charles has not shown that the BIA violated any law, we must deny his petition.

## I.

Fredly Charles, a native and citizen of Haiti, was admitted to the United States in 2007. He arrived with a parent who was engaged to marry a United States citizen, and he became a lawful permanent resident ("LPR") on a conditional basis in 2009. In 2012 he lost that LPR status, and in 2019 the Department of Homeland Security ("DHS") charged him with removability under 8 U.S.C. § 1227(a)(1)(D)(i).

Charles conceded removability, but submitted applications for cancellation of removal, adjustment of status, and protection under the Convention Against Torture ("CAT"). His applications asserted that his removal to Haiti would cause his two children -- U.S. citizens -- and his parents to suffer "exceptional and extremely unusual hardship." An Immigration

- 2 -

Judge ("IJ") disagreed, denying all three applications in 2019. Charles challenged the denial of his application for cancellation of removal, but the BIA dismissed his appeal the following year.

To be eligible for cancellation of removal, Charles had to show, among other things, that (1) his removal would result in "exceptional and extremely unusual hardship" to a qualified relative and (2) he "merit[ed] a favorable exercise of discretion." See 8 U.S.C. §§ 1229a(c)(4)(A)(1)-(ii), 1229b(b)(1)(D). The BIA and IJ found that he had not made either of these required showings. In particular, both the IJ and BIA emphasized that Charles had been arrested three times from 2015-2018 on charges including trespassing, assault and battery, possession of a controlled substance, and carrying a loaded firearm without a license.

While the arrests did not result in any convictions, the IJ and BIA found that Charles' "various interactions with the criminal justice system" weighed against "a favorable exercise of discretion" in his case. They likewise each noted that Charles had not at that point provided any financial support for his children, which in their view further undermined his claim for relief.

Charles thereafter submitted three motions to reopen his immigration proceedings, the third of which is the subject of this appeal. Charles submitted his first motion to reopen in March

- 3 -

2020. After the BIA denied that motion in August 2020, he submitted his second in September 2020.[1] The Board denied the second motion in March 2021. Charles' first two motions to reopen emphasized that most of the criminal charges against him had been dropped after the IJ's initial decision, and provided additional evidence about the hardship his family would face if he were deported. In his first motion to reopen, he also argued that conditions in Haiti had deteriorated since his merits hearing.

In its denials of Charles' first two motions, the Board found that Charles had still not shown that his removal would result in the degree of exceptional hardship to qualifying relatives necessary to warrant reopening. It also opined that he had not demonstrated that country conditions in Haiti had materially changed, nor had he articulated a persecution claim. Charles petitioned this court for review of the agency's denial of his second motion to reopen, but that petition has since been dismissed on the parties' joint motion. See Charles v. Garland, No. 21-1342 (1st Cir. Oct. 27, 2023).

Following the BIA's denial of Charles' first two motions to reopen, his wife -- a U.S. citizen -- gave birth to the couple's daughter, "A.C." A.C. was born in November 2021 with several serious medical conditions including choanal atresia, a rare and

_____

[1] The motion requested only reconsideration, but the Board treated it as a combined motion to reopen and reconsider.

life-threatening respiratory disorder. She was unable to leave the hospital until June 2022, and remains tube-fed and ventilator dependent. Charles has left his job to become A.C.'s primary caregiver while his wife works.

Citing his daughter's condition, Charles submitted his third motion to reopen in May 2022. As a result of his "new and profoundly challenging circumstances," he requested that the BIA "exercise its authority, sua sponte, to reopen and remand his proceedings." Along with the motion, he submitted evidence of A.C.'s medical needs and the inadequacy of the medical care that would be available to her in Haiti.

The Board denied the motion as "untimely and numerically barred." It found that Charles "ha[d] not submitted sufficient evidence probative of his discretionary fitness for relief to carry the 'heavy burden' of demonstrating" that the Board should nonetheless reopen his case. In its denial, the BIA also noted that, "equities acquired after the entry of a final order are entitled to less weight than those acquired before the entry of such an order." "As this is the situation presently before us (in respect to the most recent child)," the Board continued, "we decline to reopen the proceedings on our own motion." Charles now appeals the denial of his third motion to reopen.

With a few narrow exceptions, the Immigration and Nationality Act limits petitioners to a single motion to reopen filed within ninety days of a removal order. See 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). If a motion "falls outside of the timing and number restrictions" and "does not fit into one of the statutory exceptions, the only way for the petitioner to reopen proceedings is to request that the BIA reopen them sua sponte, i.e., 'on its own motion.'" Thompson v. Barr, 959 F.3d 476, 480 (1st Cir. 2020).

The Board has discretion to decide whether to grant or deny sua sponte reopening. 8 C.F.R. § 1003.2(a). No statute or regulation has provided any standard for the Board to apply in exercising its sua sponte powers. See Bonilla v. Lynch, 840 F.3d 575, 585 (9th Cir. 2016). The Board has set some parameters of its own, making clear that it will only choose to reopen sua sponte in "truly exceptional" situations. Thompson, 959 F.3d at 480 (quoting In re G-D-, 22 I. & N. Dec. 1132, 1134 (B.I.A. 1999)). But even then, "the Board is not required -- by regulation or its own decisions -- to reopen proceedings sua sponte in exceptional situations." Bonilla, 840 F.3d at 585.

Because there is no "meaningful standard against which to judge the agency's exercise of its discretion," this court lacks jurisdiction to review the Board's exercise of its sua sponte

authority.  Heckler v. Chaney, 470 U.S. 821, 830 (1985); see also Thompson, 959 F.3d at 480.  The one exception is if the Board, in exercising its discretion, somehow violates the law.  Thompson, 959 F.3d at 480-81, 483.

### III.

The foregoing means that whether we agree with the Board that this case does not present an exceptional situation warranting discretionary relief is of no moment; we have no jurisdiction to review that judgment.  Our hands are firmly tied, except to the extent we may extend them to handle claims of legal error.

Charles tries to put forward two such claims of legal error.  We consider them in turn.

### A.

Charles first argues that because the BIA in its decision did not mention the medical challenges presented by his third child, it must have ignored that evidence, and ignoring evidence should be deemed legal error.

To be sure, the BIA is required in other contexts "to consider all relevant evidence in the record."  Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008).  We need not decide whether such a requirement exists in this context, because the BIA's decision does not suggest that it ignored relevant evidence.  Charles argues that, had the Board considered the evidence he submitted about his daughter's medical condition, there would be "at least one

sentence" in the denial "showing that [the Board] had done so." But as we have previously explained, the BIA "is not required to discuss every piece of evidence offered regardless of its relation to the actual grounds of the administrative decision." Lin, 521 F.3d at 28 (citing Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000)). Rather, "[w]hen the BIA's decision is neither inconsistent with the background evidence nor gives reason to believe the BIA was unaware of it, we have no reason to doubt that the agency considered the evidence." Id.

There is no indication in the BIA's denial of Charles' motion to reopen sua sponte that it was unaware of the evidence that Charles submitted with his motion. Charles brandishes a footnote in which the Board deemed whether he had two or three children "not of particular relevance," to his motion to reopen sua sponte. With that footnote, he argues, the "BIA . . . declared its total indifference to the evidence." In context though, the footnote refers to discrepancies in the record over the total number of Charles' children.[2]

Elsewhere in the denial, the BIA makes clear it was aware that A.C.'s birth was the basis for Charles' third motion. For example, it states that "respondent's motion is based on the birth

---

[2] These discrepancies apparently stem from the fact that Charles' name did not appear on the birth certificate of one of his children born before A.C.

of his child," and implies that "the most recent child" is an "equit[y] acquired after the entry of a final order." So even though the BIA did not discuss A.C.'s medical condition, there is no reason to doubt -- at least in the context of addressing a motion to reopen sua sponte -- that it was aware of the background evidence Charles had submitted. As a result, we cannot find that the Board failed to consider the evidence in the record.

## B.

Charles additionally contends that the BIA erred in denying his motion by "arbitrarily depart[ing] from its prior practices." He points to three unpublished decisions in which the Board granted motions to reopen or remand submitted by petitioners with medically fragile children. But Charles cites no law establishing that by granting reopening in one case, the Board limits its discretion to deny relief in all similar (albeit not identical) cases. Moreover, "unpublished BIA decisions carry no precedential value." Tulung v. Garland, 102 F.4th 551, 557 (1st Cir. 2024). This is especially true when, as here, the unpublished decisions do not purport to be a representative sample. Id.; see also Djokro v. Garland, 102 F.4th 39, 46 (1st Cir. 2024) (noting that a sample of unpublished BIA decisions was not representative when it contained no cases in which the BIA denied the petitioner's requested relief). We cannot conclude that the BIA committed legal

error by coming to a different conclusion than it did in the three unpublished decisions Charles cites.

### III.

For the foregoing reasons, Charles has not shown that the BIA committed reviewable error in denying his motion to reopen sua sponte. We therefore <u>dismiss</u> his challenge to that denial.