# United States Court of Appeals
## For the First Circuit

No. 24-1330

SINE PHIMMADY,

Petitioner,

v.

PAMELA BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Edward Crane, for petitioner.

Greg D. Mack, Senior Litigation Counsel, Office of
Immigration Litigation, with whom Brian Boynton, Principal Deputy
Assistant Attorney General, Civil Division, and Sabatino F. Leo,
Assistant Director, Office of Immigration Litigation, were on
brief, for respondent.

February 10, 2025

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela Bondi is automatically substituted for
former Attorney General Merrick B. Garland as Respondent.

**RIKELMAN**, **Circuit Judge**.  Sine Phimmady asked the Board of Immigration Appeals (BIA) to reopen his removal proceedings sua sponte after a court vacated his criminal convictions from decades earlier.  The BIA denied his motion to reopen, and he petitioned our court for review.  Phimmady argues that, in rejecting his motion, the BIA departed from its settled practice of granting sua sponte reopening whenever a conviction rendering a noncitizen removable is vacated due to a defect in the criminal proceedings. He requests that we remand his case to the BIA so that it can address its settled practice.  Because we conclude the BIA does not have the settled practice that Phimmady describes, we deny his petition.

## I. BACKGROUND

In 1979, when Phimmady was just two years old, he and his family were admitted to the United States as refugees from Laos.  They initially lived in Milwaukee, Wisconsin, and then later moved to Lowell, Massachusetts.

As an adolescent, Phimmady joined a gang in Lowell, shortly after he himself was the victim of gang violence.  In connection with his gang activity, Phimmady was charged in two separate cases in Lowell Juvenile Court in 1992, when he was 15 years old.  The cases were then transferred to Middlesex County Superior Court.

In both cases, Phimmady was charged with assault-related crimes. The indictments in the first case concerned an incident on April 14, 1992, and charged Phimmady with three counts of armed assault with intent to murder, two counts of assault and battery with a dangerous weapon, three counts of assault with a dangerous weapon, and one count of conspiracy. The indictments in the second case concerned an incident three weeks earlier, on March 24, 1992, and charged Phimmady with armed robbery while masked and armed assault in a dwelling.

Phimmady pled guilty to all counts in both cases in September 1993. He was sentenced to 9 to 12 years in state prison on the first set of indictments and 10 to 15 years, suspended for 5 years, on the second set of indictments.

While Phimmady was serving his criminal sentence, Immigration and Naturalization Services (INS) initiated removal proceedings against him. The Immigration Judge (IJ) assigned to Phimmady's case found him deportable due to his 1993 criminal convictions and entered an order of removal on March 30, 1995. Phimmady appealed the removal order, but the BIA dismissed his appeal.

Phimmady served five years in state prison before being paroled in 1998 and released directly into INS custody. Rather than removing him to Laos, however, INS released Phimmady in June

2000 with an order of supervision, which required him to check in periodically with an INS office in Boston.

Phimmady then worked to rebuild his life in Massachusetts. Only eight days after his release from INS custody, he obtained a position at Hologic, Inc. and remained employed there for 17 years. He currently works as a manufacturing manager at Belmont Medical Technologies. Phimmady also married and started a family. He has three children, who all attend Lowell Public Schools. Since being released in 2000, Phimmady has not been charged with any crimes.

Over two decades after his release, Phimmady successfully sought post-conviction relief for his 1993 convictions. In 2022, he filed a motion to withdraw his guilty pleas to both sets of indictments because the judge who presided at his plea hearing did not provide him with a warning about the potential immigration consequences of his plea, as required by Massachusetts law. See Mass. Gen. Laws, ch. 278 § 29D. After a hearing on the motion, the court allowed Phimmady to withdraw his pleas, finding that the Commonwealth of Massachusetts had not carried its burden of showing that Phimmady received the required warning. The Commonwealth then filed a partial nolle prosequi in both cases (a formal notice that it would not pursue prosecution), explaining that "[d]ue to the passage of time, the Commonwealth is

no longer in possession of any information, reports, or evidence that formed the basis for the indictments."

Because a court had vacated the convictions establishing the basis of his removability, Phimmady asked the BIA to exercise its discretion to reopen his removal proceeding under 8 C.F.R. § 1003.2(a), commonly referred to as sua sponte reopening. The BIA declined, explaining that Phimmady had not "demonstrated an exceptional situation such that sua sponte reopening of these proceedings is warranted based on claimed equities arising more than 27 years after the final administrative order of removal." The BIA found it significant that Phimmady "provided no explanation" for his delay in seeking post-conviction relief.

Phimmady then filed a motion for reconsideration with the BIA. He argued that the BIA's decision in his case was at odds with its "long-standing and well-settled practice" of concluding an exceptional situation exists, warranting sua sponte reopening, whenever a noncitizen demonstrates that the conviction underlying their removal order was vacated due to a defect in the criminal proceeding. In support of his argument, he appended to his motion 92 of the BIA's prior unpublished decisions. Of the 92 decisions, he characterized 90 as examples of the settled course of adjudication that he described. He argued that the BIA had previously denied sua sponte reopening in the face of vacated convictions only when the noncitizen had already been removed, and

he attached two cases with that fact pattern.  He also explained that he had not sought post-conviction relief earlier because he could not afford to pay for an attorney prior to a change in his income in 2022.

The BIA denied Phimmady's motion to reconsider.  It found that there was no evidence of any "extraordinary circumstance" that would have prevented Phimmady from securing counsel or seeking post-conviction relief earlier.  After acknowledging the "numerous unpublished decisions where [the BIA] has exercised its sua sponte authority to reopen and terminate proceedings following a vacatur of a criminal conviction," the BIA stated that it was "bound by law to decide the merits of the matters before [it] on the specific facts and circumstances of each case."  Having considered the "totality of the facts and circumstances surrounding [Phimmady's] conviction, the egregious conduct he [pled] guilty to, [and] the technicality [on] which his conviction was vacated in part because of [his] own delay in seeking post-conviction relief," the BIA once again declined to exercise its discretion to reopen his proceedings.

Phimmady then filed this timely petition for review of the BIA's decision.

## II. DISCUSSION

### A. Jurisdiction

We begin by evaluating our jurisdiction to review Phimmady's claim that the BIA departed from its settled course of adjudication when it denied his motion for sua sponte reopening. Phimmady contends that we have jurisdiction to review his claim and requests that we remand his case to the BIA to address its settled practice. The government requests that we dismiss Phimmady's petition on the ground that we lack jurisdiction to consider his claim.

To provide context for the parties' jurisdictional dispute, we briefly summarize the statutory and regulatory scheme governing motions to reopen immigration proceedings. Before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), BIA regulations governed motions to reopen. Under those regulations, at least until 1996, there were no number restrictions or time limits on requests to reopen immigration proceedings, but there was also no statutory right to file a motion to reopen. See Dada v. Mukasey, 554 U.S. 1, 12-14 (2008). When Congress enacted IIRIRA, it codified a limited, statutory right to file a motion to reopen: A noncitizen could file one motion within 90 days of a final removal order, subject to certain exceptions. See 8 U.S.C. § 1229a(c)(7)(A), (c)(7)(C)(i)-(iv). We have jurisdiction to review BIA decisions denying a statutory motion to

reopen, Kucana v. Holder, 558 U.S. 233, 253 (2010), but this case does not concern such a motion.

In addition to statutory motions to reopen under IIRIRA, the BIA also has the authority to reopen immigration proceedings at any time based on its own regulation, 8 C.F.R. § 1003.2(a). The regulation states:

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief.

8 C.F.R. § 1003.2(a). The agency and litigants refer to a request under this regulation as a motion for sua sponte reopening.[1] "No statute or regulation has provided any standard for the Board to apply in exercising its sua sponte powers." Charles v. Garland, 113 F.4th 20, 23 (1st Cir. 2024). That said, the BIA has made clear that sua sponte reopening is "an extraordinary remedy reserved for truly exceptional situations." In re G-D-, 22 I. & N. Dec. 1132, 1133-34 (BIA 1999). Even in truly exceptional situations, however, "the Board is not required -- by regulation or its own decisions -- to reopen proceedings sua sponte."

---

[1] This nomenclature is somewhat misleading because usually the noncitizen must request that the BIA reopen proceedings. See Park v. Att'y Gen., 846 F.3d 645, 650 (3d Cir. 2017).

- 8 -

Charles, 113 F.4th at 23 (quoting Bonilla v. Lynch, 840 F.3d 575, 585 (9th Cir. 2016)).

"[W]e have limited jurisdiction to review constitutional claims or errors of law" that may crop up in the course of the BIA's resolution of motions for sua sponte reopening. Thompson v. Barr, 959 F.3d 476, 480, 483 (1st Cir. 2020) (footnote omitted).[2] We have linked our limited jurisdiction to a section of the REAL ID Act of 2005, which clarified that no provision in IIRIRA limiting or eliminating judicial review for discretionary agency decisions "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D); see Thompson, 959 F.3d at 481-83. "When the BIA's denial of a motion to reopen rests on a legal error, it is appropriate to 'remand to the BIA so it may exercise its authority against the correct legal background.'" Thompson, 959 F.3d at 483 (quoting Bonilla, 840 F.3d at 588).

The parties dispute whether this case presents a claim of legal error that we can review. Phimmady argues that by departing from its settled course of adjudication with respect to sua sponte reopening, the BIA committed a judicially reviewable

---

[2] The Supreme Court has "express[ed] no opinion on whether federal courts may review the Board's decision not to reopen removal proceedings sua sponte." Kucana, 558 U.S. at 251 n.18.

legal error. In Phimmady's view, the 90 decisions he relies upon establish a settled course of adjudication: If the noncitizen shows that the conviction rendering them removable was vacated due to a defect in the criminal proceeding, the BIA concludes that an exceptional situation justifying the exercise of its discretion exists, regardless of any other factors. The government disagrees that Phimmady has presented a reviewable legal claim; it contends that there is no settled course of adjudication and Phimmady merely asks us to find that the facts of his case are sufficiently similar to the facts of other cases where the BIA granted sua sponte reopening. The government insists that this "entirely factual" argument is "outside the scope of legal questions that are reviewable under section 1252(a)(2)(D)."

We can bypass a statutory jurisdiction question when the resolution of the case on the merits "is straightforward" and would favor the party challenging the court's jurisdiction, here the government. Chun Mendez v. Garland, 96 F.4th 58, 65 (1st Cir. 2024) (citation omitted); see also Doe v. Town of Lisbon, 78 F.4th 38, 44-45 (1st Cir. 2023). We follow that approach here, assuming that we have jurisdiction under § 1252(a)(2)(D), because we conclude that Phimmady's claim fails on the merits.

## B. Settled Course of Adjudication

Phimmady has not demonstrated the settled course of adjudication he relies on: that the BIA grants sua sponte reopening

whenever a conviction rendering a noncitizen removable is vacated. First, the BIA has not articulated a standard to apply in deciding whether to exercise its discretion to grant sua sponte reopening, except to say that it will do so only in "truly exceptional situations." In re G-D-, 22 I. & N. Dec. at 1133-34. Phimmady does not point us to any decision -- published or unpublished -- in which the BIA has expanded on what situations qualify as "truly exceptional." Nor does he point us to any decision where the BIA explicitly stated that the vacatur of the conviction making a noncitizen removable establishes a truly exceptional situation, regardless of any other factors.[3]

Second, the cases Phimmady relies on do not demonstrate the settled course of adjudication that he asserts the BIA has adopted in practice -- i.e., that the BIA will find a truly

_____

[3] The parties disagree whether unpublished decisions can ever establish a settled course of adjudication. We recognize that "unpublished BIA decisions carry no precedential value." Charles, 113 F.4th at 24 (quoting Tulung v. Garland, 102 F.4th 551, 557 (1st Cir. 2024)). At the same time, we have previously stated that "we see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases." Thompson, 959 F.3d at 487 (quoting Dávila-Bardales v. INS, 27 F.3d 1, 5-6 (1st Cir. 1994)). Thus, historically, we have considered unpublished decisions in determining whether the BIA has established a settled course of adjudication. See, e.g., Adeyanju v. Garland, 27 F.4th 25, 49 n.25 (1st Cir. 2022) (pointing out that petitioner failed to cite any precedential BIA decisions but going on to address the trend in unpublished cases); Thompson, 959 F.3d at 486-89 (considering the BIA's published and unpublished decisions). We have provided Westlaw citations to unpublished decisions where available.

exceptional situation exists based on the vacatur of a criminal conviction alone. In fact, in several of the cases Phimmady cites, the BIA stated that it was evaluating the totality of the circumstances to decide whether to reopen the case sua sponte, even when the petitioner's criminal conviction had been vacated. In at least five decisions, the BIA considered the lack of opposition from the Department of Homeland Security (DHS) in granting such motions to reopen. See, e.g., In re Jose Deltoro-Aguilar (BIA Feb. 12, 2020); In re Arutyun Demirchyan, 2019 WL 7168795 (BIA Oct. 31, 2019); In re Jose Jesus Arredondo Gomez, 2018 WL 3007175 (BIA Apr. 19, 2018); In re Jose Augustin Fernandez, 2017 WL 1951529 (BIA Apr. 6, 2017); In re Jose Maria Guerrero, 2008 WL 2517556 (BIA June 4, 2008); see also In re Luis Miguel Peguero Concepcion (BIA June 9, 2016) (suggesting, but not explicitly stating, that DHS's lack of opposition was a factor it considered); In re Ramon Peguero-Cruz (BIA July 27, 2020) (same); In re Renato De Bartolo (BIA Dec. 11, 2015) (noting DHS did not respond to the motion to reopen); In re Jacinto Moises Carbonell-Desliz (BIA Jan. 13, 2014) (same). In at least four additional cases, the BIA stated that it considered the totality of the circumstances in granting the motions to reopen, but it is not clear what factors it considered other than vacatur. See, e.g., In re Abbas Al-Murshidy (BIA Feb. 27, 2020); In re Randy Ramzi Nissu (BIA Jan 31, 2018); In re Carlos Avalos-Mendez (BIA

- 12 -

Jan. 22, 2016); In re Sewdat Rajpaul (BIA Aug. 15, 2013). However, we cannot assume from the BIA's failure to discuss additional factors in its unpublished decisions that the BIA did not consider any other factors in reaching those decisions. See Djokro v. Garland, 102 F.4th 39, 46 (1st Cir. 2024) (explaining that we could not assume the petitioners were similarly situated in "relevant respects to . . . prevailing petitioners" in unpublished BIA decisions which "d[id] not discuss the facts").

Additionally, there are at least two cases in which the BIA considered the petitioner's diligence in pursuing post-conviction relief. In one such case, the BIA granted sua sponte reopening, explaining that "[u]pon consideration of the totality of the circumstances presented in this case, including the record evidence indicating that the respondent diligently pursued his rights . . . , we find that an exceptional situation has been demonstrated that warrants sua sponte reopening." In re William Paul Okweari (BIA Oct. 4, 2018). In the other, the BIA found that the petitioner had not established that sua sponte reopening was warranted because "he [had] not adequately explained why he waited approximately 8 years after his conviction and more than 5 years after the effective date of [the law allowing vacatur], to file his motion to vacate." Matter of Ramon Gonzalez Dominguez, 2023 WL 8826712, at *2 (BIA Apr. 12, 2023). Relying on

these cases, the government argues that delay is a factor that the BIA considers in exercising its discretion.[4]

Phimmady disagrees that the BIA has considered diligence in pursuing post-conviction relief, contending that the vast majority of the BIA's decisions do not discuss delay when a conviction underlying a removal order is vacated. And he is correct that in at least two cases, the BIA went so far as to reverse IJs who had considered the noncitizen's delay in seeking post-conviction relief as a factor in denying sua sponte reopening. See In re Pakhanthong Daraphet (BIA Dec. 10, 2015); In re Isidro Cabrera-Cabrera (BIA June 27, 2018) ("As the sole conviction

_____

[4] The government points to four additional cases to support its argument that the BIA regularly considers diligence in pursuing post-conviction relief. We disagree with the government's characterization of these four cases. For example, in one of the cited cases, the BIA analyzed diligence in ruling on a request for equitable tolling, which is not at issue in this case. Matter of Friendy Grandoit, 2023 WL 4060114, at *1 (BIA Jan. 25, 2023). In two additional cases, the noncitizens had already been removed from the United States and reentered without inspection. See Matter of Samuel Avila-Morales, 2023 WL 9658715, at *1 (BIA Aug. 4, 2023); In re Jose Jesus Munoz, 2017 WL 1330146, at *3 n.1 (BIA Mar. 3, 2017). The latter two cases thus fit the pattern Phimmady described of the BIA denying sua sponte reopening if the noncitizen has already been removed. In the final case cited by the government, the BIA stated that "[t]he fact that it took over a decade for the respondent to vindicate his rights does not undermine" the reopening of the respondent's removal proceedings. In re Wagner Aneudis Martinez (BIA Jan. 12, 2016). The government takes this sentence to mean that the respondent had been diligently pursuing post-conviction relief for a decade, but that fact is not evident from the decision itself. To the contrary, the BIA's decision in Aneudis Martinez can also be read to reject delay as a relevant consideration.

underlying the respondent's removability has been vacated and is no longer valid for immigration purposes, we disagree with the Immigration Judge that sua sponte reopening is unwarranted, even though the [motion for post-conviction relief] . . . was filed many years after the respondent's removal order."). In Phimmady's view, the BIA's recent decisions in Dominguez and his own case denying sua sponte reopening based on delay do not "upset the agency's settled course of adjudication"; instead, they show that the BIA has only recently (and without explanation) diverted from its settled course of finding that a vacated conviction always gives rise to truly exceptional circumstances. Accordingly, he argues the BIA erred by citing delay as a reason to reject his motion for sua sponte reopening.

Although several outliers may not be enough to defeat a settled course of adjudication claim, we do not agree with Phimmady that his case and Dominguez are properly characterized as two exceptions from a general rule. At a more fundamental level, Phimmady has not established that the BIA has a settled practice of disregarding delay whenever the conviction underlying a removal order is vacated. By our count, the government has pointed us to one case where the BIA treated diligence as a positive factor and one case, other than this one, where it treated delay as a negative factor. See Okweari; Dominguez, 2023 WL 8826712, at *2. On the other hand, Phimmady has pointed us to two cases disclaiming that

approach and reversing IJs who found that delay cut against sua sponte reopening when the conviction underlying a noncitizen's removal order was vacated.    See Daraphet; Cabrera-Cabrera. Although we are sympathetic to the principle that similarly situated individuals should be subject to similar and predictable standards, Phimmady cites "no law establishing that by granting reopening in one case, the [BIA] limits its discretion to deny relief in all similar . . . cases." Charles, 113 F.4th at 24.

In the majority of the cases submitted to us in which there are several years between the noncitizen's conviction and the ultimate post-conviction relief, we simply cannot tell from the BIA's decision when the noncitizen began pursuing post-conviction relief.[5]    As a result, we have no way to know

_____

[5] See Aneudis Martinez; In re Ramon Peguero-Cruz (BIA July 27, 2020); In re Arutyun Demirchyan, 2019 WL 7168795 (BIA Oct. 31, 2019); In re Albert Limon Castro, 2018 WL 8333468 (BIA Dec. 28, 2018); In re Chouanson Chang (BIA Oct. 27, 2014); In re Ignacio Javier Perez-Hernandez (BIA July 18, 2013); In re Phillip Harris, 2010 WL 3780640 (BIA Sept. 9, 2010); In re Zygmunt Kierewicz, 2010 WL 304228 (BIA Jan. 7, 2010); In re Roberto Brito, 2008 WL 5025245 (BIA Nov. 5, 2008); In re Manuel Fidalgo, 2008 WL 2079336 (BIA Apr. 24, 2008); In re Delfino Hernandez-Ruiz, 2005 WL 3709277 (BIA Dec. 28, 2005).    In some cases, it is not even clear when the noncitizen received post-conviction relief (let alone when it was sought).    See In re Kaydian Mckenzie, 2019 WL 2613143 (BIA Mar. 25, 2019) (11 years between removal order and motion for sua sponte reopening based on vacatur); In re Durid Bahjat Hana, 2006 WL 901310 (BIA Feb 22, 2006) (15 years between the conviction and the IJ's decision denying sua sponte reopening based on vacatur); In re Jose Luis Barreiro, 2005 WL 1111833 (BIA Apr. 21, 2005) (12 years between removal order and motion for sua sponte reopening based on vacatur).    Notably, in their briefing, the parties

whether the noncitizen delayed seeking post-conviction relief or whether the process of receiving that relief was lengthy. Because we lack that information, we cannot say Phimmady has established that the BIA always grants sua sponte reopening when the conviction underlying a noncitizen's removal order is vacated regardless of any other factor, including a noncitizen's delay in seeking post-conviction relief. See Menendez-Gonzalez v. Barr, 929 F.3d 1113, 1118 (9th Cir. 2019) ("[T]he existence of a 'settled course' cannot be lightly inferred."). Accordingly, we cannot conclude that the BIA committed the legal error of departing from a settled course of adjudication.

### III. CONCLUSION

For all these reasons, the petition for review is **denied**.

---

highlighted BIA decisions where many years passed between the noncitizen's conviction, removal order, and post-conviction relief. In our view, these cases are the relevant subset for determining whether the BIA has a settled practice that would apply to Phimmady -- namely, a settled practice of granting sua sponte reopening due to the vacatur of a conviction underlying removal, regardless of delay. For that reason, we have not discussed cases that Phimmady cites that did not involve a similarly long time period between the conviction and post-conviction relief.