# United States Court of Appeals
## For the First Circuit

Nos. 24-1204, 24-1696

REDZO HODZIC; EDINA HODZIC,

Petitioners,

v.

PAMELA J. BONDI, United States Attorney General,

Respondent.[*]

PETITIONS FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Gelpí and Rikelman, Circuit Judges.

Melanie Shapiro, with whom Law Office of Melanie Shapiro, LLC, was on brief, for petitioners.

Taryn L. Arbeiter, with whom Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, Walter Bocchini, Senior Litigation Counsel, Office of Immigration Litigation, and Leslie McKay, Assistant Director, Office of Immigration, Civil Division, U.S. Department of Justice, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela J. Bondi is automatically substituted for former Attorney General Merrick B. Garland as respondent.

March 19, 2026

**GELPÍ**, **Circuit Judge**.  In these consolidated petitions for review, Edina and Redzo Hodzic (the "Hodzics") seek review of the Board of Immigration Appeals's (BIA) orders denying their motion to reopen sua sponte and their motion to reconsider.  The Hodzics contend that the BIA's denial of their motion to reopen rested on legal and constitutional errors.  We **deny** the Hodzics' petitions for review.

### I. BACKGROUND

We gather our background from the administrative record, which includes the Hodzics' testimony before the immigration judge ("IJ") in October 2001.  See, e.g., Gonzalez-Arevalo v. Garland, 112 F.4th 1, 6 (1st Cir. 2024).

### A. Entry into the United States

Edina Hodzic is a native and citizen of Serbia, formerly part of the Federal Republic of Yugoslavia.  Her husband, Redzo Hodzic, is a native and citizen of the Republic of North Macedonia, formerly part of the Socialist Federal Republic of Yugoslavia. The Hodzics are Bosnian Muslims (Bosniaks) who, prior to entering the United States, lived in the Sandzak region of Serbia.  In their brief, the Hodzics refer to the Bosnian genocide that took place between 1992 and 1995 in Bosnia-Herzegovina and the Kosovo War that ended in 1999 to describe the conditions existing in their region right before they left Sandzak in 2000.

Edina testified before the IJ that the Hodzics fled from Serbia in May 2000 because they grew fearful of the increased presence of Serbian military forces in Sandzak following the North Atlantic Treaty Organization's (NATO) bombing of Serbia in 1999. They worried that conditions in Serbia or North Macedonia would not be safe for their soon-to-be-born child.

On June 22, 2000, the Hodzics entered the United States by presenting forged Slovenian passports at Dulles International Airport in Virginia. During an interview with an Immigration and Naturalization Service (INS) inspector at Dulles, the Hodzics expressed fear of returning to Serbia and North Macedonia. Accordingly, the INS (now the Department of Homeland Security (DHS)) referred them for an interview with an asylum officer. After the asylum officer determined that the Hodzics had a credible fear of persecution, they were paroled into the United States and placed in removal proceedings.

### B. Procedural History

On June 26, 2000, the INS filed Notices to Appear with the Immigration Court in Arlington, Virginia. The INS charged the Hodzics as removable under 8 U.S.C. § 1182(a)(6)(C)(i) for fraudulently or willfully misrepresenting a material fact to procure admission into the United States and under § 1182(a)(7)(A)(i)(I) for lacking a valid entry document at the time of their application for admission. The Notices to Appear

- 4 -

listed the time and date of the hearings as "to be determined." On July 7, 2000, the Arlington Immigration Court sent a second Notice of Hearing in Removal Proceedings, which specified that both cases were scheduled for a Master Hearing on August 17, 2000, at 9:00 a.m. In August 2000, the venue for the removal proceedings changed to the Immigration Court in Boston, Massachusetts. The Hodzics had their first master calendar hearing on November 2, 2000, where they submitted written pleadings to the charges contained in the Notices to Appear and requested the opportunity to apply for asylum, withholding of removal, or relief under the Convention Against Torture.

In March 2001, Edina filed an I-589 Application for Asylum and Withholding of Removal and designated Redzo as a derivative applicant. The application listed four grounds for asylum: persecution based on her religious identity "as a [Muslim] from the region of Sandzak in Serbia,"[1] imputed political opinion "due to the political activities of the Bosnian/[Muslim] community," nationality, and membership in a particular social group (the Bosniak community of Sandzak).

In October 2001, the IJ heard testimony from the Hodzics regarding the I-589 Application. In March 2002, the IJ issued a

---

[1] As a Bosnian Muslim growing up in the Sandzak region, Edina was "aware of the risks of openly identifying with the . . . Bosniak community" and had to practice her religion in secret.

written decision finding the Hodzics removable as charged and ineligible for relief and protection from removal. In April 2002, the Hodzics appealed this decision and in April 2004, the BIA dismissed the appeal. The Hodzics then filed a petition for review with this Court, which was voluntarily dismissed. See Judgment, Hodzic v. Gonzales, No. 04-1684 (1st Cir. Oct. 25, 2006).

On June 9, 2005, while the petition for review was pending in this Court, the Hodzics filed a motion to reopen removal proceedings with the BIA, seeking adjustment of status based on an approved employment-based visa for Redzo. The BIA denied the motion on December 27, 2005, finding it untimely. The Hodzics then sought reconsideration of the BIA's denial of the motion to reopen, which the BIA denied on April 13, 2006.

On April 29, 2006, the Hodzics filed Applications to Register Permanent Residence or Adjust Status ("Adjustment Applications"). Following a jointly filed motion to reopen submitted by the Hodzics and DHS, the BIA reopened proceedings and remanded the record to the IJ on September 29, 2006. The IJ then terminated the removal proceedings solely to permit the United States Citizenship and Immigration Services (USCIS) to adjudicate their applications for adjustment of status. On September 24, 2009, the USCIS denied the Adjustment Applications, finding that the Hodzics "sought admission to the United States by fraud or willful misrepresentation" and thus were inadmissible under 8

- 6 -

U.S.C. § 1182(a)(6)(C)(i). Their case was then transferred back to the Boston Immigration Court, where the IJ ultimately ordered the removal of Redzo to North Macedonia, and in the alternative, to Serbia, and the removal of Edina to the former Republic of Yugoslavia. The Hodzics subsequently filed an appeal with the BIA, which the BIA dismissed on May 21, 2013.

In March 2020, the Hodzics filed a motion to reopen sua sponte before the BIA. On July 9, 2021, the BIA denied the motion to reopen.

On July 28, 2021, the Hodzics filed another motion to reopen sua sponte. On this occasion, the Hodzics argued that Niz-Chavez v. Garland, 593 U.S. 155 (2021), introduced a "fundamental change in case law" that made them eligible for non-lawful permanent resident cancellation of removal. Niz-Chavez held that a notice to appear sufficient to trigger the "stop-time rule" is a single document containing all the information required under 8 U.S.C. § 1229(a)(1),[2] and that inadequate or incomplete notices to appear cannot be cured by one or more subsequent notices. Id. at 170. The Hodzics argued that DHS never issued

---

[2] Nonpermanent residents who have been physically present in the United States for a continuous period of ten years may be eligible for a form of discretionary relief known as cancellation of removal. 8 U.S.C. § 1229b(b)(1). Under the "stop-time rule" set forth in 8 U.S.C. § 1229b(d)(1)(A), this period of continuous physical presence ends when the noncitizen is served a notice to appear under 8 U.S.C. § 1229(a). Pereira v. Sessions, 585 U.S. 198, 201 (2018).

them a "sufficient" notice to appear and they had thus "accrued the required ten-year continuous presence." They also alleged that their removal would result in "exceptional and extremely unusual hardship" to their relatives, given their daughter's medical conditions.[3] Lastly, the Hodzics submitted letters attesting to their good moral character and documents showing their lack of criminal history.

On February 21, 2024, the BIA denied the Hodzics' 2021 motion to reopen. The BIA considered their record, including the 2020 and 2021 motions to reopen, as well as their circumstances, and ultimately held that the Hodzics did not present an "exceptional situation" that warranted reopening. The Hodzics filed a motion to reconsider the BIA's decision in March 2024, which was denied by the BIA in June 2024. The Hodzics now seek review of their 2020 motion to reopen sua sponte and 2024 motion to reconsider.

---

[3] The Hodzics' first-born child, Emma, suffers from severe medical issues. Emma was born with craniosynostosis, a condition that requires remodeling surgeries to correct deformities in her skull. Edina also has "end-stage liver disease." In a letter dated February 28, 2020, Dr. Irun Bhan, a transplant hepatologist at Massachusetts General Hospital, stated that "it is necessary for [Edina] to be under the care of a hepatology subspecialist at a tertiary referral center" where her condition can be "properly managed." The Hodzics worry that Edina and their daughter would not receive proper healthcare if both were to return to their home countries.

## II. DISCUSSION

Although the Hodzics challenge the resolution of their motion to reopen sua sponte and their motion to reconsider, they fail to address the latter in the discussion section of their opening brief. Only after the Government drew attention to this omission did the Hodzics attempt to raise the issue in their reply brief. Our case law is clear that "[a]rguments raised for the first time in an appellate reply brief [are] ordinarily deemed waived." United States v. Mojica-Ramos, 103 F.4th 844, 849 n.3 (1st Cir. 2024) (second alteration in original) (quoting United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016)). Accordingly, the Hodzics' arguments regarding the denial of the motion to reconsider are waived.

We now move on to address the Hodzics' challenges to the denial of their motion to reopen sua sponte. Because they bear on the jurisdictional inquiry, we first discuss the avenues available to noncitizens seeking to reopen their removal proceedings. We then turn to each asserted legal and constitutional error in turn.

A noncitizen may file two types of motions to reopen: (1) statutory motions to reopen under 8 U.S.C. § 1229a(c)(7) and (2) motions to reopen sua sponte under 8 C.F.R. § 1003.2. The statutory motion to reopen is part of the Immigration and Nationality Act, whereas the motion to reopen sua sponte is a creature of regulations promulgated by the Attorney General.

Only one statutory motion to reopen is allowed, and it ordinarily must be filed within 90 days of the date of entry of a final order of removal. 8 U.S.C. § 1229a(c)(7). If a statutory motion to reopen is untimely or number-barred, a petitioner may request that the BIA reopen the proceedings sua sponte.

The BIA has discretion to grant or deny motions to reopen sua sponte under 8 C.F.R. § 1003.2(a), which provides:

> The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief.

Sua sponte reopening is "an extraordinary remedy reserved for truly exceptional situations." Phimmady v. Bondi, 128 F.4th 18, 22 (1st Cir. 2025) (quoting G-D-, 22 I. & N. Dec. 1132, 1133-34 (BIA 1999)). Even if faced with such "exceptional situations," the BIA "is not required -- by regulation or its own decisions -- to reopen proceedings sua sponte." Charles v. Garland, 113 F.4th 20, 23 (1st Cir. 2024) (quoting Bonilla v. Lynch, 840 F.3d 575, 585 (9th Cir. 2016)).

## A. Jurisdiction and Standard of Review

While appellate courts have jurisdiction to review denials of motions for statutory reopening, Reyes Mata v. Lynch, 576 U.S. 143, 149 (2015), we generally lack jurisdiction to review

BIA decisions on motions to reopen sua sponte, Gyamfi v. Whitaker, 913 F.3d 168, 176 (1st Cir. 2019). Courts cannot "evaluate . . . agency action for 'abuse of discretion'" when "no judicially manageable standards are available for judging how and when [the BIA] should exercise its discretion." Id. (second alteration in original) (quoting Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999)). Thus, such decisions are left to the discretion of the BIA and are not subject to review by this Court. Id.

However, we do have limited jurisdiction to review BIA denials of motions to reopen sua sponte when these are premised on legal or constitutional error. Phimmady, 128 F.4th at 22; see also Thompson v. Barr, 959 F.3d 476, 481 (1st Cir. 2020) ("[S]ometimes there are judicially manageable standards to apply even when the relief sought is purely discretionary -- as is the case with motions to reopen sua sponte."). In such cases, "it is appropriate to 'remand to the BIA so it may exercise its authority against the correct legal background.'" Phimmady, 128 F.4th at 22 (quoting Thompson, 959 F.3d at 483).

For this Court to exercise jurisdiction, a petitioner must allege claims of constitutional or legal error that are at least "colorable." See Gyamfi, 913 F.3d at 177. For a claim to be colorable, "the argument advanced must, at the very least, have some potential validity." Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007). "In determining whether a petitioner has raised a

- 11 -

colorable constitutional claim or question of law, substance must triumph over form. . . . Put another way, we must look to the meat of the petitioner's arguments, not to the packaging in which they are wrapped." Ramirez-Matias v. Holder, 778 F.3d 322, 326 (1st Cir. 2015).

The Government argues that this Court lacks jurisdiction to consider the BIA's decision because the Hodzics do not raise any colorable legal or constitutional claims. Although this Court generally has an obligation to determine whether it has jurisdiction before proceeding to the merits, see Phimmady, 128 F.4th at 21, we may "bypass[] enigmatic jurisdictional questions in circumstances in which precedent clearly adumbrates the result on the merits," Paye v. Garland, 109 F.4th 1, 9 (1st Cir. 2024) (alteration in original) (quoting Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007)). We may exercise hypothetical jurisdiction "[w]here a 'case poses a question of statutory, not Article III, jurisdiction' and where 'a decision on the merits will favor the party challenging the court's jurisdiction.'" Johansen v. Liberty Mut. Grp. Inc., 118 F.4th 142, 148 (1st Cir. 2024) (quoting Caribe Chem Distribs., Corp. v. S. Agric. Insecticides, Inc., 96 F.4th 25, 28 (1st Cir. 2024)). Here, the jurisdictional question is statutory, see Thompson, 959 F.3d at 483, and the Hodzics' challenges to the BIA's decision clearly fail. Thus, hypothetical statutory jurisdiction is proper.

- 12 -

The Hodzics allege that the BIA committed several legal and constitutional errors, which we review de novo. See Santos Garcia v. Garland, 67 F.4th 455, 460 (1st Cir. 2023); Benitez v. Wilkinson, 987 F.3d 46, 52 (1st Cir. 2021).

**B. Claims of Legal Error**

The Hodzics contend that the BIA's denial of their motion to reopen sua sponte rested on three legal errors. They first argue that the BIA failed to apply the statutory definition of "exceptional circumstances" to the BIA's "exceptional situations" standard. Second, they assert that the BIA's decision was "arbitrary and capricious" because it did not provide an explanation as to why their circumstances were not considered "exceptional." Third, they argue that the BIA erred because it failed to determine that a "fundamental change in case law" constitutes "exceptional circumstances." And fourth, they claim that the Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), prohibits this Court from deferring to the BIA's decision. We address each claim in turn.

**1. The Exceptional Situations Standard**

The Hodzics argue that the BIA's failure to apply the statutory definition of "exceptional circumstances" found in 8 U.S.C. § 1229a(e)(1) when determining that their case did not present "an exceptional situation" constitutes legal error. In so

doing, the Hodzics confuse the statutory definition of "exceptional circumstances," 8 U.S.C. § 1229a(e)(1), with the "exceptional situations" standard created through BIA precedent.

The term "exceptional circumstances," as used in 8 U.S.C. § 1229a, applies to motions to reopen under § 1229a(b)(5)(C)(i), which governs motions to rescind removal orders that an IJ issues in the noncitizen's absence, due to his or her failure to appear in removal proceedings. Such orders may be rescinded "upon a motion to reopen filed within 180 days after the date of the order of removal if the [noncitizen] demonstrates that the failure to appear [before the IJ] was because of exceptional circumstances (as defined in subsection (e)(1))."[4] 8 U.S.C. § 1229a(b)(5)(C)(i). Because the Hodzics' motion to reopen sua sponte does not fall under this statutory authority, the application of the "exceptional circumstances" definition was not required.

When reviewing motions to reopen sua sponte under 8 C.F.R. § 1003.2, on the other hand, the BIA applies the "exceptional situations" standard. Charles, 113 F.4th at 23

_____

[4] "Exceptional circumstances" are defined as "exceptional circumstances (such as battery or extreme cruelty to the [noncitizen] or any child or parent of the [noncitizen], serious illness of the [noncitizen], or serious illness or death of the spouse, child, or parent of the [noncitizen], but not including less compelling circumstances) beyond the control of the [noncitizen]." 8 U.S.C. § 1229a(e)(1).

- 14 -

(quoting Bonilla, 840 F.3d at 585). This standard developed through BIA precedent. See J-J-, 21 I. & N. Dec. 976, 984 (BIA 1997). As other circuit courts have acknowledged, no "statutory, regulatory, or case law definition" exists for this term. Cuevas-Nuno v. Barr, 969 F.3d 331, 335 (6th Cir. 2020) (quoting Bonilla, 840 F.3d at 586). The "exceptional situations" standard, therefore, does not arise from the same authority or apply in the same context as the "exceptional circumstances" definition.

It thus cannot be legal error for the BIA to refuse to cross-apply the statutory definition of "exceptional circumstances" when finding that the Hodzics did not present an "exceptional situation" warranting reopening. The Hodzics' claim regarding the application of the "exceptional situation" standard clearly fails.

## 2. Arbitrary and Capricious

The Hodzics next argue that the BIA's determination was "arbitrary and capricious" because it did "not provide any explanation as to why their circumstances were insufficient" to reopen their case. The Hodzics argue that the BIA was required to state "with sufficient particularity and clarity" the reasons for denying relief. To support their argument, the Hodzics cite to case law concerning reviews of BIA decisions following timely appeals, not motions to reopen sua sponte. See Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005); Gailus v. INS, 147

- 15 -

F.3d 34, 43 (1st Cir. 1998). The Hodzics do not point to any controlling precedent that establishes such a requirement for BIA denials of sua sponte reopenings. Thus, their argument fails as a matter of law.

### 3. Fundamental Change in Case Law

We now turn to the Hodzics' third claim of legal error. They contend that the BIA erred in failing to determine that a fundamental change in case law constituted "exceptional circumstances" warranting reopening.[5] In their motions to reopen, the Hodzics argued that "the proceedings should be reopened and remanded based on Niz-Chavez v. Garland to allow them to apply for cancellation of removal." (Citation omitted.). The BIA did not specifically address their argument. Now on appeal, the Hodzics assert that the BIA's decision to deny reopening in spite of Niz-Chavez conflicts with BIA precedent that establishes that fundamental changes in case law constitute "exceptional circumstances."

The Hodzics' argument rests on a faulty premise. Citing to G-D-, 22 I. & N. Dec. 1132 (BIA 1999), they suggest that the BIA was required to reopen their removal proceedings once it identified a "fundamental change in case law." But

_____

[5] We take the Hodzics' mention of "exceptional circumstances" to refer to the "exceptional situations" standard discussed in Section II.B.1.

- 16 -

G-D- establishes only that, in certain situations, a fundamental change in case law may constitute an "exceptional situation." Id. at 1135. And, as we have discussed, the BIA has discretion to deny motions to reopen sua sponte, even when "exceptional situations" are present. Charles, 113 F.4th at 23 (quoting Bonilla, 840 F.3d at 585). Thus, even if the BIA had found that there was a fundamental change in case law, it was under no obligation to reopen proceedings. See id.

The Hodzics also fail to explain why the BIA erred in its, albeit implicit, treatment of Niz-Chavez. They do not argue that the BIA misunderstood or misapplied that decision, or that its denial rested on an incorrect view of governing law. Instead, they merely assert -- without analysis and in a single paragraph of their brief -- that Niz-Chavez compelled reopening. That is insufficient to bring this case within the narrow jurisdictional exception permitting review. Our jurisdiction is limited to correcting misunderstandings of the law such that the BIA can exercise its discretion under the correct legal premises. See Phimmady, 128 F.4th at 22. We thus conclude that the Hodzics' claim of legal error based on the Niz-Chavez decision is meritless.

### 4. **Loper Bright** Argument

The Hodzics cite Loper Bright to broadly argue that this Court "cannot defer to [the BIA] where there is ambiguity" and must "exercise[] [its] independent judgment in deciding whether

[the BIA] acted within its statutory authority." See 603 U.S. at 412. Loper Bright construed the Administrative Procedure Act (APA) to require courts reviewing agency actions to determine de novo the "meaning of statutory provisions," Id. at 394, overruling the Chevron doctrine, which had required a reviewing court to defer to an agency's interpretation of an ambiguous statute so long as it set forth a "permissible construction of the statute," id. at 397 (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)). Thus, after Loper Bright, courts no longer need to and, under the Administrative Procedure Act (APA), "may not defer to an agency interpretation of the law simply because a statute is ambiguous." Id. at 413.

None of legal challenges posed by the Hodzics require us to review the BIA's interpretation of an ambiguous statute. Rather, the Hodzics' claims stem from the BIA's discretionary authority in considering motions to reopen sua sponte. See 8 C.F.R. § 1003.2(a). Because we do not face a question of statutory interpretation, and because the Hodzics do not argue that Loper Bright applies beyond the APA context, Loper Bright is inapposite to our analysis. See Zapet-Alvarado v. Bondi, 152 F.4th 329, 336 n.6 (1st Cir. 2025). The Hodzics' challenge to the BIA's determination on these grounds is therefore meritless.

- 18 -

**C. Claims of Constitutional Error**

We now turn to the Hodzics' assertions of constitutional error. The Hodzics bring two distinct challenges under the Due Process Clause of the Fifth Amendment. First, they argue that the lack of "reliability in [the BIA's] sua sponte determinations . . . deprived [them] of procedural due process." Second, they claim that the BIA violated their substantive due process right to "family integrity" or "familial association."

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens. Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

The Due Process Clause has both procedural and substantive components. Procedural due process "guarantee[s] . . . that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." Maldonado-González v. P.R. Aqueduct & Sewer Auth., 158 F.4th 27, 34 (1st Cir. 2025) (alterations in original) (quoting González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)). Substantive due process, however, "bar[s] certain government actions regardless of the fairness of the procedures used to

implement them."  Daniels v. Williams, 474 U.S. 327, 331 (1986); see also United States v. Salerno, 481 U.S. 739, 746 (1987) ("Substantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." (citation modified)). We will address each of the Hodzics' due process claims in turn.

First, as to the Hodzics' procedural due process claim, this Court has held that "[t]he BIA's exercise of its 'purely discretionary' sua sponte authority," as in this case, "does not create a cognizable liberty interest."  Reyes, 886 F.3d at 188 (quoting Matias, 871 F.3d at 72).  Because the Hodzics do not have a cognizable liberty interest in the BIA's decision, their procedural due process claim lacks merit.

Second, the Hodzics assert a substantive due process violation based on the deprivation of their fundamental liberty interest in family integrity.  Indeed, parents have a fundamental liberty interest in "the care, custody, and control of their children."  Foote v. Ludlow Sch. Comm., 128 F.4th 336, 345 (1st Cir. 2025), petition for cert. filed, No. 25-77 (U.S. July 18, 2025).  In their brief, however, the Hodzics only reference the right to family integrity in passing.  They make mere conclusory statements that the BIA's actions violated their constitutional rights.  Accordingly, the Hodzics' substantive due process claim is waived for lack of development.  See United States v. Zannino,

- 20 -

895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### III. CONCLUSION

For the foregoing reasons, the petitions for review are **denied**.